(Decided June 23rd, 1859.)

---

## MARGARET LEVERING AND OTHERS *vs.* MARY ANN LEVERING ADMX. *d. b. n., c. t. a.*, of SARAH BROWN.

A testatrix by the residuary clause of her will, devised and bequeathed to her two daughters Hannah and Sarah, during their natural lives, "all the rents, issues and profits, from all the rest and residue of" her estate,

Levering, *et al.*, *vs.* Levering, Adm'x of Brown.

"and in the case of the death of *either* of them, the rents, issues and profits of the one so dying shall be equally divided between *the heirs of the said deceased*," and after the death of *both*, she directs her executor to sell at public sale "said property so devised to the said Hannah and Sarah, in fee-simple, upon a credit, and the nett proceeds of said sale after deducting his reasonable expenses, *unto and amongst the heirs and representatives* of the said Hannah and Sarah, their heirs and assigns forever." HELD.

That upon the death of both the daughters, the *children of each* are entitled to *one-half* the estate disposed of by this clause of the will; the distribution is not to be made *per capita* amongst the children of both.

APPEAL from the Orphans Court for Baltimore City.

The appeal in this case was taken from an order of the court below, dismissing the petition of the appellants. The only question in the case, arises upon the construction of the will of Sarah Brown, which, with the facts of the case, is fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Geo. W. Dobbin* and *Wm. A. Talbott,* for the appellants.

The question presented by this record, arises upon the residuary clause of the will of Sarah Brown. In relation to the first clause of this bequest there can be no doubt. It was obviously the intention of the testatrix to give to her two daughters, then living, an equal participation in her estate, and she accordingly declares, that each shall have one-half of the rents, issues and profits during her life, the interest of the one first dying, to descend to the children of such deceased. But, on the death of both of her daughters, she clearly contemplates a new state of things, and a new disposition. This was natural and equitable, since all the new objects of her bounty stood in equal degree of relationship to her, all being her grand-children though descended in unequal numbers from her daughters. It is not the law of nature that grandchildren divide among themselves only the share of affection due from their grand-parent to their immediate parent; nor is it the law of property that an estate shall be divided, *by the*

*mere operation of law,* in the same way.   The substitution of children in the place of parents, *per stirpes,* is effected by the law only, in case of clearly expressed intention that such substitution shall take place; and no case can be found in which the clear grammatical construction of a bequest admits of distribution *per capita,* that the courts have decreed a distribution *per stirpes,* because of any supposed principle of legal or equitable construction, demanding such a distribution.   Thus it has been held, that where a devise or bequest is made to the children of several persons, whether it be to the children of A and B, or to children of A and the children of B, they take *per capita,* and not *per stirpes,* 2 *Vern.,* 705, *Weld vs. Bradbury;* 1 *Cox,* 250, *Lugar vs. Harmon;* 10 *Ves.* 166, *Lincoln vs. Pelham;* 8 *Ves.* 604, *Barnes vs. Patch;* and when a gift is made to A and B's children, or "to my brother's and sister's children," it will be construed as a gift to A and the children, and B, in the first case, or in the second case, to the brother's and sister's children, as it strictly and properly imports, and not to the children, and both, as the expression is sometimes inaccurately used, to signify.   3 *East,* 172, *Doe vs. Joinville.* This state of the law is recognised, and the authorities first cited in 2 *Powell on Devises,* 330, 331.   The case at bar falls precisely within the principle of these authorities, and there is nothing in any part of the will to indicate a different intention.

The error in the argument for the appellees consists in the assumption, that the two clauses which constitute the residuary bequest are necessarily neglected, and that because the testatrix gave the profits of the residue in question to her two daughters, share and share alike, during their joint lives, with a remainder during the life of the survivor to the children of the one first dying, she therefore meant, that the same division of interest into two parts should continue after the death of both.   This is obviously a *non sequitur.*   The testatrix contemplates two distinct periods of time, during which her estate should be enjoyed according to the peculiar circumstances of her family.   During the life-time of her daughters she disposed of the rents and profits only in the proportion of

one half to each; and to the heirs of the one first dying till the other should die. Upon the death of both, as from a new starting point, she orders the division of the whole *corpus* among the heirs of her daughters, who are the testatrix's grand-children, all standing in equal degree of consanguinity to her. There is no interest vesting in the heirs of the one first dying, which continues after the death of the surviving sister; on the contrary, all the interest given by the first clause of the devise ceases, and the devisees of the *corpus* of the estate, though described as *heirs*, take as purchasers under a new and distinct devise. The question then is, how are they to take? *per stirpes* or *per capita?* There is no expressed intention that they are to take *per stirpes;* the grammatical construction of the words implied a taking *per capita.* Is there any rule of construction applicable to wills which prefers a distribution *per stirpes* to one *per capita?* The authorities give no such rule. The statutes of distribution adopt the principle of representation as a wholesome, general rule, where a decedent has omitted to make a will, and prescribe the mode in which his property shall be distributed. But where a decedent makes a will he must provide for representation by express provision, or clearly indicated intention. Else the courts will not arbitrarily ingraft the doctrine upon his will. The cases cited by the appellants, firmly establish this, and are conclusive upon the case at bar; nor do those cited by the appellees militate against it. On the contrary, upon examination, they will be found to recognise the doctrine fully, and to rely upon the appellants' authorities with approval. If, under a devise to the children of A and B, they take *per capita,* then this devise, "unto and amongst the heirs and representatives of the said Hannah Levering and Sarah Levering, their heirs and assigns forever," is a devise *per capita* among the persons answering to that description.

*Hugh L. Bond* for the appellees.

There would seem to be no doubt as to the meaning of the will during the life of either of the legatees for life. The will, though inartificially drawn, is, to that extent, beyond the

reach of doubt. The bequest is to Hannah and Sarah, during *their lives*, of the profits of the residue. This of course, alone, would have given a joint estate for life. The following words convert it into an estate in common, for it directs that the profits of the one dying *first* should go to *her* heirs. Heirs can then mean next of kin only, and the persons so described are to take, because of such relationship to the deceased, without any other description, and no matter who or what they may be holding that relation to the dying sister. They therefore, on the death of the sister, take her profits. This is clearly a gift to the *whole stock* of the dying sister's next of kin, and, of course, must go to them *per stirpes*, for the whole *stirps*, within the legal description, is to take, and what they take is the whole share of the dying sister. There is no attempt to reckon what share they are entitled to on the hypothesis of a *per capita* division between them and the next of kin of the surviving sister. The thing would be, in law, an impossibility, because, till the death of both, it cannot be known who will be the next of kin of both. The will therefore continues on the death of one, to the next of kin of such decedent, the profits of the decedent. They might continue to hold them for half a century—so long as the other sister lives —and during that time the division is clearly to be *per stirpes*. If so, is there any thing which, in the event of the death of the surviving sister, alters, by increasing or diminishing, the interest of the next of kin of the first decedent sister?

Certainly there is nothing expressed on that subject. The will gives the *profits* of the stock during the life of the sisters and of the survivor; that is, the stock is to kept undivided; it is not to be sold; it is a mere life-estate, not to vest in any one in severalty till the death of both, and not to be divided till the death of both. But when both are dead the will then contemplates the vesting of an absolute right in severalty among the persons entitled. To accomplish this purpose it gives the executor power to sell the stock after the death of the survivor, but there is an omission of any word of gift or division—probably by accident—of the net proceeds. The words are, "and the net proceeds unto and amongst the heirs

and representatives of the said Hannah and Sarah Levering." There is here no new disposition of the property *in the proportions* in which it is to go to the two families—certainly none expressed. The implication is against it, because it would involve a different interest in the same set of persons, at different times, without any reason for a difference, and without any thing to indicate that the thought of such a difference was in the mind of the testatrix. Neither is there any rule of law which countenances such a change of intention. The interest which is *expressed* as to its quantity must stand, no matter how ambiguous following words may be, for the ambiguity cannot overcome an *expressed* intention, nor divest an actually vested interest. But there is no ambiguity even. The rule of law seems quite settled, that however it may be when *children* or *issue* are designated, neither children nor issue are terms of legal descent or devolution guiding the distribution of property after death, but are simply words of purchase, describing persons who are to take, yet when heirs or representatives are the persons to whom an interest is given in personalty, after a life-estate, they are words describing the persons who, *in law*, bear that relation to the decedent; and that being so, the law gives the property to the persons who are heirs or representatives, in the same proportions the law would give it had the decedent died possessed of the property to be distributed according to law. It divides the property among the heirs of Hannah and Sarah, just as if Hannah had died holding her half, and Sarah had died holding her half. Such is the ruling in the case of *Rowland vs. Gorsuch*, 2 *Cox*, 187, and on the principle that representatives must take under a bequest in a will just as they would under a statute which defines what representatives are. The representatives of Hannah are one body known to the law, and the representatives of Sarah are another body of persons known to the law, and giving the property to and among the *representatives* of Hannah and Sarah does not make, of the two legal bodies of representatives, one body, nor make the representatives of each the representatives of both, but it is the representatives of Sarah and the representatives of Hannah to whom the law gives the

property. It is quite irrelevant to cite the law of nature against the law of Maryland, and for us the law of Maryland embodies the law of nature, as we understand it. The cases cited seem quite as irrelevant as the law of nature. They are *all* cases of bequests to *children*, and not to a class of legal representatives; and *that* distinction disposes of *all* the cases cited.

The language of this will is precise on this point. There is no reason to suppose that children were exclusively in the testatrix's mind. Her words are much wider. They cover every contingency covered by the law of distribution. Any person who, by that law, might be the next of kin of either sister is within the words heirs and representatives. One sister might have been the only person representing her sister or remote cousins or uncles. It might have been that one sister might have died childless—her sister her only next of kin—and the disposition of the property, on the death of the survivor, would still equally follow the words of this will. So there is no reason to speak of the equal love of the testatrix for grand-children; for it might have equally been a case where persons in equal degrees, but in the ascending line, might have been persons who should be the *representatives* of the two sisters at the death of the survivor; nay, persons who bore no sort of relationship to the testatrix, as for instance, uncles on the father's side of the said Hannah and Sarah. A rule of interpretation, therefore, which is drawn from the affection of the testatrix, is a rule too narrow for a guide in dividing property among the representatives of the legatees for life. 1 *Hoff. Ch. Rep.*, 213, *Wright vs. Trustees of the Methodist Episcopal Church.* 2 *Mylne & Keene*, 82, *Elmsley vs. Young.* 2 *Wms. Excrs.*, 815, 820. 1 *Ball & Beatty*, 466, *Crone vs. Odell.* 3 *Brown's Ch. Cases*, 69, *Phillips vs. Garth*

ECCLESTON, J., delivered the opinion of this court.

From this record it appears that, in the year 1830, Sarah Brown departed this life, leaving a will, and owning personal property consisting of stocks and leasehold estate, but having no realty.

Her will contains the following provisions:

"I give, devise and bequeath unto my son John Brown, the dividends and interest arising from six shares of Bank of Baltimore stock, as also the dividends and interest on sixty-three shares of Mechanics Bank stock, during his natural life.

"I give, devise and bequeath unto my daughters, Hannah Levering and Sarah Levering, during their natural lives, the dividends and interest arising from the said stocks, after the death of my said son, John Brown.

"I give, devise and bequeath unto Hannah Levering and Sarah Levering, for and during their natural lives, all the rents, issues and profits from all the rest, residue and remainder of my estates, real, personal and mixed, to their own separate use and uses, and in the case of the death of either of them, then, and in that case, the rents, issues and profits of the one so dying shall be equally divided between the heirs of the said deceased; and I will and direct that my executor, hereinafter mentioned, after the death of the said Hannah and Sarah Levering, shall set up and expose to public sale, giving three weeks' notice in some of the newspapers of the said city, said property so devised to the said Hannah and Sarah, in fee-simple, upon a credit, and the nett proceeds of said sale, after deducting his reasonable expenses, unto and amongst the heirs and representatives of the said Hannah Levering and Sarah Levering, their heirs and assigns forever."

Letters testamentary were granted to Philip Moore, the executor named in the will. He died and letters of administration *de bonis non*, with the will annexed, were duly granted to the present appellee, Mary Ann Levering.

John Brown survived his mother, and died many years since.

Sarah Levering departed this life leaving the petitioners, now appellants, with George W. Levering and Eliza B. Levering, her children and heirs at law; which said Eliza has since died, intestate and without issue, leaving the petitioners and the said George W. Levering, her brothers and sisters of the whole blood, and the said Mary Ann Levering, her sister of the half blood, surviving her.

Hannah Levering died leaving five children, who are all living.

It is admitted, "that the administratrix has distributed among the parties all the estate, except the sum actually in controversy."

The question we are asked to decide is, whether, under this will, upon the decease of the two daughters of the testatrix, the children of each were entitled to one-half of the estate intended to be disposed of by the last clause in the will; or whether the children of both were to take *per capita?*

The counsel for the appellants claim a distribution of the fund *per capita.* We think this is not consistent with the intention of the testatrix. Having given to the two daughters, for their separate use, for life, all the rents, issues and profits of all the residue of the estate, the will provides, that "in case of the death of either of them, then and in that case the rents, issues and profits of the one so dying shall be equally divided between the heirs of the said deceased." Whatever interpretation may be given to this word "heirs"—whether heirs-at-law, children, or next of kin—it clearly means, heirs-at-law, children, or next of kin, of the daughter first dying. And as the one who died first left children, they then became entitled to one-half of the rents, issues and profits; the surviving daughter still being entitled to the other half. This is admitted by the counsel for the appellants. In their printed argument they say: "In relation to the first clause of the bequest, there can be no doubt. It was, obviously, the intention of the testatrix to give to her two daughters, then living, an equal participation in her estate, and she accordingly declares, that each shall have one-half of the rents, issues and profits, during her life, the interest of the one first dying to descend to the children of such deceased." They, however, then say: "But, upon the death of both of her daughters, she contemplates a new state of things and a new disposition." And they insist, that it is this new disposition which gives the appellants the right to claim a distribution *per capita,* and not *per stirpes.*

Should it be conceded that the interpretation insisted upon

by the appellants' counsel, would be correct if the provision made with regard to the decease of the two daughters had stood alone, still it is not so when viewed in connection—as it must be—with the previous provision, in the same residuary clause, in reference to the decease of one. Having there clearly shown an intention to give to the children of one daughter the precise one-half of the estate which their mother had, no matter which of the daughters of the testatrix should die first, whether it might happen to be the one leaving the largest or smallest number of children, it would seem right to suppose the testatrix had a like intention of giving to the children of each mother the share of the mother, when providing for the decease of both of them.

Should it be supposed that the will of the testatrix created in each of her two daughters, not merely a life-estate but a fee, the children of each would be entitled to the same division or distribution of the fund in contest, as they would if the will should be construed as giving to each daughter but a life-estate.

We think the court did wrong in dismissing the petition of the appellants. Although they were not entitled to the full amount claimed by them, yet they were each entitled to a portion of the fund in dispute.

The decree will be reversed and the cause remanded, for the purpose of having the principles of this opinion carried into effect.

The costs are to be paid out of the fund, such being the agreement of the parties.

<em>Decree reversed and cause remanded.</em>

(Decided June 24th, 1859.)