REBECCA M. THOMPSON & OTHERS *vs.* HENRY YOUNG & OTHERS.

WILL,—CONSTRUCTION OF.—By the last clause of his will, Y. devised the rest and residue of his estate in trust, that the same should be sold after the death of his wife, and that the trustees should pay, out of the proceeds, "unto my (his) brother W's children the sum of one thousand dollars each, when and as they shall respectively arrive at age," &c., with limitation to survivors, &c. He then adds: "And after paying the above sum of *five thousand* dollars unto and amongst my brother W's children, or the survivors or survivor of them, then I do hereby order and direct my trustees and executors, and the survivor of them, to pay the surplus of the moneys arising from the said sale or sales unto and amongst the legal representatives of my beloved wife, Elizabeth." It appeared in evidence that there were more than five children of W.— HELD:

1st. That the general intent in favor of the children of W. must control the particular intent with regard to the amount devised. The will must be construed as if the reference to the amount had been omitted.

2nd. That the legal representatives of Elizabeth Young, standing in equal degree to said Elizabeth, would take *per capita* and not *per stirpes*.

APPEAL from the Circuit Court of Baltimore city:

The bill in this case was filed by the residuary devisees of the late Joseph Young, deceased, for the settlement of his estate under the will. There are but two questions arising on this appeal, both of them questions of construction, and neither of them requiring a further statement of details than is made in the opinion of this Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*O. Miller*, for the appellants:

1. It may be assumed, as shown by the testimony, that William Young's seven children had been born and were living at the time of the death of the testator. John Young,

however, who is one of them, and who was called by the appellees, deposes, that he does not think the testator knew of the two youngest children. The testator, he says positively, never saw them. This evidence, to which there can be no exception taken, certainly lays the broadest foundation, outside of the will, for the inference which is inevitable from the terms of it, viz: that the testator intended to give legacies of $1,000 each to five children of William, and no more, and that he intended that the whole amount of his bequests to that family should not exceed $5,000. Whether he would have given $1,000 to each of the seven, if he had been aware that there were so many, is not the question, as the Court below seems to have supposed. As to the admissibility of the evidence referred to under this point, see *Gibbs vs. Gale,* 7 *Md. Rep.,* 76. *Stokeley vs. Gordon,* 8 *Md. Rep.,* 496.

That point it is quite as impossible for the Court to determine, as to decide whether he would not have made the several legacies less, had he supposed that his brother had children enough to absorb so large a sum as $7,000, if he gave them $1,000 each. The Court cannot supply the testator's want of knowledge, or speculate as to what he ought to have done, or would have done, if he had been better informed. The judicial province is to determine what he actually did, and in arriving at such determination the Court is bound to look at the surrounding extrinsic facts known to the testator, and concerning which he acted. And that, as a matter of fact, he did not know of, or intend to provide for, more than five of his brother's children, is shown collaterally by the conduct of the witness, John Young, himself, *ante litem motam.* The Court will find that in 1858, he assigned his own interest to the Baltimore Life Insurance Company, and that in his assignment he speaks of the bequest as having been of $1,000 to "each of the five children" of William Young. This was thirty-four years after the testator's death, and

with all the knowledge derived from the assignor's relation to the parties, he having been twenty-four years old when Joseph Young died.

The appellants will regard the construction of the will as definitely settled in their favor by the extrinsic proof.

Construing the will, however, by itself, in connection with the single fact that William Young had seven children, the appellants will further contend, as matter of law, that the clause by which the testator limits his bounty to $5,000, in all, controls the whole bequest. The Court below seems to have considered that his brother's children were exclusively the objects of the testator's favor, and that his language ought to be enlarged and altered, as a matter of course, to admit as many of them as possible. It will be contended, on the other hand, that the testator manifestly intended to benefit his wife's representatives by a devise to them of the whole residue of his estate, less only $5,000, and that there is no principle upon which the Court is authorized to construe the will " as if five had been written seven," to their detriment. The case is entirely different from the ordinary one in the books, where there is simply a bequest of a named sum, *e. g.*, to each of the three children of A. B., when, in fact, A. B. has four children, but no gross amount is named. There the bequest would be void for uncertainty, and the residuary devisee would receive more than it was the manifest intention of the testator to give him. Here, the testator himself sums up the amount he intends to be deducted from the residue, and the Court can divide it among the seven, if it should not think, in view of John Young's evidence, that the youngest two children were excluded. This settlement would reconcile the conflict between the clauses, if the Court, after considering that evidence, should believe any conflict to exist. *Ogle vs. Connor*, 4 *Md. Ch. Dec.*, 425. *Lesley vs. Lake*, 1 *Beav.*, 151. *Hampshire vs. Pearce*, 2 *Ves. Sr.*, 216, *Iglehart vs. Kirwan*, 10 *Md. Rep.*, 559. 1 *Roper on Lega-*

*cies*, 143, 144. *Sherratt vs. Bentley*, 2 *Mylne & Keen*, 149. *Lynch vs. Hill*, 6 *Munf.*, 114. 1 *Brevard*, 419, 420. *Chase vs. Loockerman*, 11 *G. & J.*, 206.

2. The second question is one entirely between the appellants themselves, and requires the Court to determine how "the legal representatives of Elizabeth Young" are to take, *inter se*.

Mrs. Young had two sisters, one of whom was the mother of the appellant, Charles Horne, and the other was the mother of Mrs. Thompson, and Joshua and Charles R. Barney, the other appellants. Are these "representatives" to take equally, or is Mr. Horne entitled to the one-half, in the right of his mother, leaving the others to divide the remaining half between them? Is the word "representatives" merely a description of a class, or does its use involve the further consequences that those who compose the class must take the precise shares they would have taken had the property been Mrs. Young's? The solicitor for the appellants, representing all the parties, is not entitled, and does not assume to make any concessions for Mr. Horne, who asserts his rights amicably, as the Court shall determine them to exist. Subject to this explanation, he respectfully suggests:

1. That the words "legal representatives" do not mean executors or administrators. 2 *Jarman on Wills*, 39, 41, (*marg.*) *Green vs. Howard*, 1 *Bro. Ch. Rep.*, 133. *Butler vs. Stratton*, 3 *Id.*, 367. *Rayner vs. Mowbray*, 3 *Id.*, 234. 1 *Roper on Legacies*, 126 to 129. *Alder vs. Beall*, 11 *G. & J.*, 123. *Maddox vs. State of Md.*, 4 *H. & J.*, 539. *Levering vs. Levering*, 14 *Md. Rep.*, 30.

2. That as the complainants are all of the same degree of relationship to Mrs. Young, the general rule applicable to their case is that of equality of distribution, and particularly where there are words pointing in that direction, as the words "unto and amongst" may fairly be construed to do. 2 *Jarman on Wills*, 47, 48, (*marg.*) See also authorities cited under the last point.

*A. H. Hobbs*, for the appellees:

In order to arrive at the proper and correct interpretation of the will of Joseph Young, we must assume for the purposes of argument, that there are now seven children of William Young, claiming each $1,000. The deceased children, in legal contemplation, are represented here by the survivors. The legacies became vested immediately on the death of the testator. *Lark, &c., vs. Linstead*, 2 *Md. Rep.*, 425, 428. *Spencer vs. Robins*, 6 *G. & J.*, 507. 1 *Jarman on Wills*, 756, 757, &c.

The legacies having thus vested, and on the subsequent death of Joseph and Joshua, accrued to the survivors, Henry Young and others, who are the objects of the testator's bounty, what did the testator intend they should receive? He directed his executors "to pay, or cause to be paid, to his brother William Young's children, the sum of one thousand dollars each." Here is a gift in language too clear for dispute. It is certain, definite and beyond all reasonable doubt. If there was no other clause in the will in reference to this legacy, I suppose no one would for a moment question the right of these appellees to receive the full sum of $7,000. Is there, then, any clause or word in the will sufficiently clear and positive to overthrow and set aside the force and effect of the language in which the gift is bestowed? It is contended that because the testator, in a subsequent part of the will, directs that after "paying the above sum of $5,000 unto and amongst my brother William Young's children," and then the residue over to certain other persons, that this equivocal language is to over-ride and nullify the clear and positive terms conferring the gift. By the universal experience of mankind, and the unvarying teaching of the law, equivocal or doubtful language must always give place to certain guarded terms, for the obvious reason that it is most likely to lead to correct conclusions; and it makes no differ-

ence in what part of the will the repugnant or apparent contradictory clauses are placed, the well recognized canon of interpretation is, we must take the whole paper and deduce therefrom such conclusion as will, if possible, gratify the intention of the testator, seizing, as a matter of course, the strong, positive language as land-marks and guides to the desired end. Reduced to the wholesome necessity of finding the testator's intention from the will, shall we discard the plain, positive terms employed by him, and as a preference and choice, rely upon vague, indefinite language? Shall we make choice of the lesser and reject the greater light, when light is the object of our inquiry? It is truly said by a learned teacher of the law, that "it must not be understood that because the testator uses in one part of his will words having a clear meaning in law, and in another part words inconsistent with the former, that the first words are to be cancelled and overthrown."

"A contrary principle is now fully established, that the general intent, although first expressed, shall overrule the particular." *Jesson vs. Wright*, 2 *Bligh*, 56. 11 *G. & J.*, 206, 207. 1 *Phillips' Ch. Rep.*, 536, (*English.*) 2 *Comst.*, 78. *Redfield on Wills*, 416. 16 *Ves.*, 45. 2 *Clarke & Finnelly*, 36. *Baldwin Rep.*, 459.

That the testator's "leading intent" was to give to each of his brother William Young's children, *in esse*, at the date of the will, $1,000, I think clear. This same principle of construction is very forcibly and clearly expressed by Chief Justice MARSHALL in the case of *Smith vs. Bell*, 6 *Peters*, 69, wherein he is reported to have said, "where there are two intents inconsistent with each other, that which is primary will control that which is secondary,"—the primary intention was to give $1,000 to each of the children.

The Court will observe that where the testator uses the words, "the above sum of $5,000," it is the first and only

mention made of that sum; he had not "above" used any such language, showing clearly, I think, that he supposed there were but five children of his brother William surviving at that time, and the purport of the words, "the sum of $5,000," was simply and plainly to represent the number of five children. The bill in this case is predicated on the notion that there were but five children, and assumes that the sum of $5,000 represents the number of children, that is, $1,000 to each.

If the testator had said,—to the five children of my brother William, I give and bequeath the sum of $1,000 each, and it was ascertained after his death, there were seven, it would, on positive authority, be too clear for argument; but if what the appellees insist to be the fact, and what the bill alleges and sets forth, that the testator designed the language he employed to stand in the place of designating the number of children, does not the same conclusion necessarily follow?

Keeping in view the important fact that there are seven children claiming the bounty of the testator, I will proceed to present the case in another aspect.

Each of the children must receive $1000, or the will is void for uncertainty. We cannot accomplish the impossibility of giving $1000 to each of seven children if there are but $5000. Nor can your Honors undertake to say which five of the seven children the testator intended as the objects of his bounty. These are the impossibilities growing out of the construction which the appellants seek to enforce. Our theory makes all plain and easy. It is well settled that when a certain sum is given to each of several persons and the number is erroneously stated, each of the persons take the sum named, disregarding altogether the numerical restriction. *Yeates vs. Yeates,* 16 *Beav.,* 170. *Daniel vs. Daniel,* 3 *De Gex & Smail,* 337. 2 *Jarman on Wills,* 108, 109, &c. *Garvey vs. Hilbert,* 19 *Ves.,* 125.

I submit, therefore, upon general principles, as well as on these special authorities, that the decree of the Court below ought to be affirmed.

Bowie, C. J., delivered the opinion of this Court.

The construction of a clause of the last will and testament of the late Joseph Young, of Baltimore city, is the subject of the appeal in this case.

The testator made his will on the 26th of June, 1823, devising to certain trustees and their heirs, after the death of his wife, all the rest, residue and remainder of his estate, real, personal and mixed, not therein before devised, and among other provisions devised as follows, viz: "In trust that they, or the survivor of them, with all convenient speed after the death of my wife, shall set up and expose to public sale, after giving notice, etc., all my said estate, etc., "and out of the monies arising from said sale or sales to pay, or cause to be paid, unto my brother William Young's children the sum of one thousand dollars each, when and as they shall respectively arrive at age, and in case they, or either of them, shall happen to die before he, she or they shall have attained the age of twenty-one years, or day of marriage, then the part or share of him, her or them so dying to go and be distributed amongst the survivors or survivor of them, share and share alike; *and after paying the above sum of five thousand dollars* unto and amongst my brother William Young's children, or the survivors or survivor of them, then I do hereby order and direct my trustees and executors, and the survivor of them, to pay the surplus of the monies arising from the said sale or sales unto and amongst the legal representatives of my beloved wife, Elizabeth Young." The testator died in 1824, without children or their descendants, leaving a widow (who survived until 1862,) and two brothers, William and John Young. William had, at the time of the execution of the

58      v. 25.

will, and at the death of the testator, seven children, but it is doubtful whether the testator knew of the existence of the two younger children of William, as he never saw them.

The appellants, claiming under the residuary clause of the will, relying upon extrinsic proof, and construing the will in connection with the fact that William Young had seven children, contend that, as a matter of law, the clause by which the testator limits his bounty to $5,000, in all, controls the whole bequest; that the testator manifestly intended to benefit his wife's representatives by a devise to them of the whole residue of his estate, less only $5,000, and there is no principle by which the Court can construe the will as if "*five*" had been written "*seven*," to their detriment; that this is not a case where the will would be void for uncertainty, unless the restrictive clause is rejected, as the testator sums up the amount to be deducted from the residue, which the Court can divide among John Young's children as it may think them entitled, which would reconcile the clauses, if after considering the evidence, they should think any conflict exists.

The appellees' theory is, that the restrictive clause, being in conflict with the general intent of the will, *according* to the authorities, should be rejected, and that each of the seven children of William Young, who survived the testator, is entitled to the sum of $1,000, making an aggregate of seven, instead of five thousand dollars, to be deducted from the residue.

The Court below adopted this view, hence this appeal. There is a second question as to the principle of distribution of the surplus among the appellants, which will be considered in its order.

There is no exception to the evidence offered by the complainants; indeed, both parties rely on it to show the number of the children of William Young at the execution of the will and the death of the testator, and the ambiguity

Thompson et al. vs. Young et al.

being one which arises from extrinsic circumstances, such testimony was necessary and clearly admissible.

The leading cases relied on by either party, with few exceptions, are collected in the elementary writers, and the rules of construction deduced from them, so that it is too late to say any of such cases is an "*obiter dictum.*"

This Court, in the case of *Chase vs. Lockerman*, 11 *G. & J.*, 205, adopts some of the general rules of interpretation laid down by the English authors on Wills and Testaments thus: "In 2 *Wms. on Exr's*, 711, speaking of bequests to children in a class, the author says: generally speaking, every person who, at the time of the testator's death, falls within the described class of children, will be entitled. But where it appears from express declaration, or clear inference from the will, that the testator intended to confine his bequest to those only who answered the description at the date of the instrument, such intention must be carried into effect. A Court of Equity, however, is always anxious to include all children in existence at the time of the death of the testator, and particularly when he stands in the relation of parent to the legatees," etc.

In the same case, this Court declared: "It is a well established rule in the construction of wills, that where there is a general and particular intent apparent upon the face of the will, the general intent, although first expressed, shall control and overrule the particular intent.

Thus, in 2 *Wms. on Ex'rs*, 714, it is said, it must not, however, be understood, that because the testator uses, in one part of his will, words having a clear meaning in law, and in another part, words inconsistent with the former, that the first words are to be cancelled or overthrown. A contrary principle is now fully established in the doctrine already considered, that the general intent, although first expressed, shall overrule the particular intent. 11 *G. & J.*, 206.

The English authorities on this subject, say: " It often happens that a gift to children describes them as consisting of a specified number, which is less than the number found to exist at the date of the will." In such cases it is is highly probable that the testator has mistaken the actual number of the children; and that his real intention is that all the children, whatever may be their number, shall be included. " Such, accordingly, is the established construction, the numerical restriction being wholly disregarded." " Indeed, unless this were done, the gift must be void for uncertainty, on account of the impossibility of distinguishing which of the children were intended to be described by the smaller number specified by the testator." 2 *Jarmyn*, 108, *in mar. Roper on Legacies*, 1 *Vol. p.* 143.

These rules of construction are as much as possible to be harmonized.

The general intent is not to be sacrificed to the particular, because by gratifying the latter the rule of necessity may be avoided.

The presumption of law is in favor of the children as a class. Although the testator in this case was not the parent, being an uncle, and dying without children, it must enure to the benefit of the legatees, *pro hac vice;* he stood in " *loco parentis.*" The testator must be regarded as contemplating his nephews and neices with equal affection, and intending their equal advantage; his will not distinguishing them in any manner as individuals. He spoke of them and treated them as a whole. Standing to him, as nearest of kin, ( except his brothers, who were excluded by the express terms of the will in favor of the children of his brother William,) the children must be assumed to be next in his affections.

The argument that the testator, by his subsequent mention of the sum of five thousand dollars, thereby limits his bounty to that sum, and furnishes the means of avoiding

uncertainty, is founded upon the assumption that the amount of the legacy was the principal and the number of the legatees the secondary consideration, reversing the rule cited by this Court with approbation from 2 *Wm's Exrs.*, in 11 *G. & J.*, 206, and controlling the general intent in favor of the children by a particular intent with regard to the amount.

This Court cannot depart from the well established rules of construction in this respect. The will must be construed as if the reference to the amount had been omitted.

The second question presented by the brief of the counsel for the appellants, whether the surplus or residue should be divided " amongst the legal representatives " of Elizabeth Young, *per capita* or *per stirpes*, is resolved by a reference to a few well known authorities.

The appellants, by an agreement in the record, have submitted the distribution among the legal representatives of Elizabeth Young, deceased, as if the exceptants had formally prayed an appeal. It appears from the account referred to, that the auditor has assigned to Charles R. Horne, one-half of the nett balance. The case of *Levering vs. Levering* does not, we think, apply to the distribution of the surplus in this. This Court placed their decision in that case upon a clear intention to give to the children of one daughter, the precise one-half of the estate which their mother had, no matter which of the daughters of the testatrix should die first, whether it might happen to be the one leaving the largest or smallest number of children. *Vide* 14 *Md. Rep.*, 39.

In the will under consideration, there is no standard of distribution. The residuary legatees are described in general terms. It is clearly established that these words, " legal representatives," mean next of kin when used in the connection they are found in. *Vide* 2 *Jarmyn*, 41, (*mar.*) If the equivalent words had been used, the rule of distribution would have been that established by the testamentary system in cases of intestacy, the testator, not having desig-

nated the proportions of the residue, or the persons among whom it should be divided. The parties entitled taking according to their respective relationship, if standing in equal degree, "*per capita;*" if in unequal degrees, "*per stirpes.*"

The words of the bequest in this case do not indicate any purpose to make a different distribution, and where the will is silent the general law of distribution should prevail. *Vide, Roper on Wills,* 126. The appellants, standing in equal degree to Elizabeth Young, would take *per capita.* We find no error in the decree below, and, therefore, affirm the decree. But, inasmuch as the appellants have submitted their rights to the decision of this Court, we think the distribution of the surplus by the auditor should be corrected in conformity with the principles above mentioned. We, therefore, remand the cause, that the account distributing the residue may be modified.

*Cause remanded.*

(Decided July 14th, 1866.)