STILLMAN ILSLEY and others *vs.* LEONARD ILSLEY and another.

Cumberland. Opinion August 14, 1888. Announced March 23, 1887.

*Will.   Trust.   Trustee.*

The will bequeathed five-sevenths of the residue of the testator's estate, to the plaintiffs in trust, thereby creating five distinct trusts of one-seventh each for the benefit of the respective *cestuis que trust* named, and authorized each trustee to use for the support of the respective beneficiaries such part of his or her share of the principal funds, as he in his good judgment may deem necessary. In a subsequent paragraph, the will provided that none of the funds shall be paid to any one of the beneficiaries " so long as their health and strength continue, and they are able to do anything (or something) for

themselves for their support, to be held till any one of them becomes sick and totally unable to support themselves. The fund to be a reserve fund in case (any one) of sickness, . . what I mean by sickness is to take the cases of my brother (named) and sister-in-law (named) all of which proved incurable or total." *Held*, that these latter clauses are to be deemed merely advisory, and to be followed by the trustees as nearly as they in their good judgment may deem necessary.

On report.

Bill in equity by the trustees under the will of Joseph Ilsley to obtain a construction of the will.

Heard upon bill and answers and a copy of the will which is sufficiently stated in the opinion.

*Lewis Pierce*, for plaintiffs.

*John A. Waterman*, for respondents.

" A clearly expressed intention in one portion of the will, is not to yield to a doubtful construction in any other portion of the instrument."

" The plain and unambiguous words must prevail." Red. on Wills, Vol. 1, pp. 430, (12) 433, (2) and 434 (4).

" When the intention is obscured by conflicting expressions, it is to be sought rather in a rational and consistent, than an irrational and inconsistent purpose." Jarman's XIII Rule.

VIRGIN, J. In the first sentence of this holographic will the testator expresses himself as " being desirous to make a suitable provision for (his) my brothers, nephews and nieces." After making a few specific bequests to various persons, he then bequeathed five-sevenths of the " residue of his estate " to certain trustees named, one-seventh " for the benefit " during life of two surviving brothers, and one-seventh " for the equal benefit" during life of the respective nephews and nieces of each of three deceased brothers—thus creating five separate and distinct trusts.

After designating the fund which the respective *cestuis que trust* are to have the benefit of, the testator then declared his general intent as to the mode of dispensing the funds among them in the following clear and unambiguous language : " Each of said trustees is hereby authorized to use for the support of

either of the persons for whom he is trustee, such part of his or her fractional share of the principal funds (as) in his good judgment (he) may deem necessary." And to show his entire confidence in the "integrity and faithfulness" of the trustees, he also appointed them executors of his will and "directed that no bond shall be required of them as executor or trustees."

Each and all of the provisions of the will harmoniously concur in showing the manifest purpose and general intent of the testator in dispensing the five-sevenths of the residue of his estate among his beneficiaries to be as above indicated—leaving it at the discretion and in the good judgment of the trustees—except one paragraph which occurs later in the will. That contains expressions which not only render obscure the general import of the will, but which are repugnant to it. For instance, the provisions that none of the funds shall be paid to any of the beneficiaries "so long as their health and strength continue and they are able to do anything (or something) for themselves, for their support—to be held till any one of them becomes sick and totally unable to support themselves." "The fund to be a reserve fund in case (any one) of sickness." . . And "what I mean by sickness is to take the cases of (his) my brothers named and his sisters-in-law named," all of which proved incurable or total.

The literal force and effect of these expressions would utterly defeat the obvious intention and primary purposes of the testator which the earlier language of the will legitimately imported. These expressions are repugnant to all that goes before. It is absurd to suppose that the testator really intended that no part of the trust funds should be used for the benefit of those for whom he was "desirous to make a suitable provision" to keep them from the poor house, or for their relief in case of sickness, until the trustees knew that the objects of his bounty had become "incurable" and were beyond relief. Such a construction of the whole will would be unreasonable and inconsistent with its manifest intention.

We think these latter clauses at most should be deemed merely advisory in character, to be followed by the trustees as

nearly as their "good judgment," in which the testator so implicitly relied, "may deem proper."

*Decree accordingly.*

PETERS, C. J., WALTON, LIBBEY, FOSTER and HASKELL, JJ., concurred.