Edward B. Aldrich et al. *vs.* Winthrop W. Aldrich.
ET AL.

MAY 29, 1917.

PRESENT: · Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

(*1*)　*Wills.　Trusts.　Intention.*

By a testamentary trust of the residue, testator in one clause of his will, gave general directions " to keep in good order and repair and properly insured " the " improvements upon the real estate," and in another clause authorized and directed the trustees to pay from the net income of the estate a sum " not exceeding $25,000 in any one year," for the maintenance of the " Warwick Neck Estate." The testator expressed the hope that this estate after distribution of his general estate would continue in the possession of his family. From the balance of the income the trustees were directed to make certain payments, to the widow and children. Owing to additional real estate acquired after the execution of the will and additional buildings erected and other improvements added to the Warwick Neck Estate it was impossible to maintain the property or to prevent its deterioration without additional annual expenditure. There was sufficient income after payments of the annuities to the widow and children to provide for the increased expenditure on the property.

*Held,* that the will showed a general intention worked out in detail that the Warwick Neck Estate should not be sold during the continuance of the trust, and should be carefully kept up and improved, and, therefore, the particular intention limiting the amount to be annually spent for maintenance must give way to the general intention that the estate should be kept up and maintained in a thorough manner.

(*2*)　*Wills.　Construction.　General and Particular Intention.*

In the construction of a will, the general intention is to control the particular intention if there be an irreconcilable inconsistency between them.

BILL IN EQUITY for construction of will. Certified under Gen. Laws, 1909, cap. 289, sec. 35.

BAKER, J. This is a bill in equity for the construction of the will of the late Senator Nelson W. Aldrich, and the cause is certified to this court by the Superior Court

sitting within and for the county of Kent under the provisions of Section 35 of Chapter 289 of the General Laws.

The complainants, Edward B. Aldrich, Lucy T. Aldrich and Richard S. Aldrich, are children of the decedent, and bring their bill of complaint individually and as trustees under said will against Winthrop W. Aldrich, Abby A. Rockefeller, Stuart M. Aldrich, William T. Aldrich, and Elsie Aldrich Edgell, all also children of the decedent and twelve grand children, all infants, under the age of twenty-one years, said parties being all of the now living descendents of the testator.

Mr. Aldrich died April 16, 1915, leaving a last will and testament bearing date July 29, 1908, which was duly admitted to probate May 27, 1915. After devising certain real estate in Providence to his widow, Abby P. Aldrich, in fee simple, and making certain bequests, the testator devised and bequeathed all the rest, residue and remainder of his estate of every kind to his said widow and the above-named complainants in trust for the uses and purposes set forth in the will. His widow, Abby P. Aldrich, did not accept the appointment as trustee or act as such, and died intestate February 17, 1917. The trustees are by the will authorized and directed during the continuance of the trust to pay from the net income of the estate a sum " not exceeding twenty-five thousand dollars in any one year " for the maintenance and upkeep of the testator's real estate on Warwick Neck in the town of Warwick, called in the will the Warwick Neck Estate, and from the balance of such income to pay to each of his said children (except said Abby A. Rockefeller, who was given a legacy outright) the sum of eight thousand dollars per year during the continuance of said trust, and to pay over the remainder of said income to his said wife during the term of her natural life for her own use and benefit.

At the expiration of twelve years from April 16, 1915 (the date of testator's death), the trust is to terminate

and thereupon said trustees are required to pay over and convey, discharged of any trust, all the trust estate then remaining in their hands in equal shares unto such of the testator's children (excepting said Abby A. Rockefeller) as shall then be living, and the lawful issue then living of either of them that may have theretofore deceased, by way of representation.

The complainants represent that said Warwick Neck Estate consists of a large tract of land in the residential district of the town of Warwick, comprising approximately one hundred and seventy-four acres, some of which land was acquired by the testator after making said will, and that the buildings thereon consist of a large mansion house, constructed after the execution of said will, a large building comprising both a boathouse and dwelling house, a tea house, three large summer cottages, a gardener's house, extensive greenhouses, two gate lodges each constituting a dwelling house, a water tower and a garage. Said estate also includes a heating and power plant, approximately two miles of macadamized roads (as appears by the testimony), walls, gates, wharf, walks, many valuable trees, shrubs, vines and plants and a large area of lawn, all of which is taxed by said town of Warwick on an assessed valuation of five hundred thirty-seven thousand and one hundred dollars ($537,-100).

The complainants aver upon information and belief that the necessary expenses for the maintenance and upkeep of the Warwick Neck Estate at the time said will was made were considerably less than twenty-five thousand dollars a year, but that owing to additions made thereto and the additional buildings and other improvements thereon, said expenses have so very largely increased that in consequence it is now wholly impossible to keep up and maintain said estate in the manner set forth in said will or in such a way as to prevent its dete-

rioration in condition and depreciation in value without an annual expenditure thereon of approximately forty thousand dollars.

They also aver that since the testator's death the expenditures by them and by the said Abby P. Aldrich, acting in conjunction with them and contributing from her own income therefor, have annually exceeded thirty-one thousand dollars for the maintenance of said estate, but that such amount has been insufficient to keep up and maintain said estate in the manner provided for by said will and as the same was always kept up and maintained by the testator in his lifetime.

They further aver that their authority and duty is uncertain in that the said will in its fifth clause provides for the payment of the expenses of maintenance of said Warwick Neck Estate from the gross income, while the sixth clause thereof makes such expense payable from " net income," and also in that the specific instructions as to maintenance cannot be carried out without the expenditure of a larger amount than the sum named in the will therefor. They also represent that if it be held that under the general authority to maintain and keep up said Warwick Neck Estate the trustees' authority to expend further sums in excess of twenty-five thousand dollars a year for its proper maintenance, the making of such increased expenditures and payments for such upkeep would leave the balance of the net income of said trust estate far in excess of the sum of fifty-six thousand dollars required for the payment of said annuities to his said seven children and their respective issue.

The complainants therefore pray that this court may declare and determine the construction of said will to be such as to authorize them as trustees to expend from the income of said trust estate during the continuance of said trust such sum or sums annually as they may reasonably deem necessary for the maintenance and upkeep of said

Warwick Neck Estate and to prevent its deterioration and depreciation, and that they may be instructed as to their duty in the premises, and for other and further relief. The five respondents who are *sui juris* have answered, admitting the allegations of the bill and join in the prayer for the relief there asked for. The guardian *ad litem* of the infant respondents and of all persons not in being or ascertainable, whose interests may be affected by this cause submits their rights and interests to the care and protection of this court.

(1) The testimony taken in the cause clearly proves the allegations of the bill. The question presented requires consideration of the fifth and sixth clauses of the will, which are as follows:

" Fifth. All the rest, residue and remainder of the estate, real, personal and mixed of which I shall be seized and possessed or to which I shall be in any way entitled at the time of my decease, including all real estate hereafter acquired by me, I give, devise and bequeath unto my wife, Abby P. Aldrich, and my children, Edward B. Aldrich, Lucy T. Aldrich and Richard S. Aldrich, as joint tenants, their heirs, executors and administrators, IN TRUST, for the uses and purposes and with and subject to the powers and limitations hereinafter expressed and declared concerning the same, that is to say:

" In trust for the said Abby P. Aldrich, Edward B. Aldrich, Lucy T. Aldrich and Richard S. Aldrich, and the survivors and survivor of them, and other the trustees or trustee under this trust for the time being, hereinafter called ' my said trustees,' to take possession and charge of all said trust estate, the improvements upon the real estate; to keep in good order and repair and properly insured against loss by fire, and the personal estate to invest and to keep invested in safe and productive securities, with power at any time, or from time to time to sell any part or parts of said trust estate (other than any of

my real estate situated on Warwick Neck, in the Town of
Warwick, in the County of Kent, in said State, all of
which is hereinafter called the Warwick Neck Estate),
as my said trustees shall deem expedient, and the net
proceeds thereof invest as aforesaid, with power also at
any time, or from time to time to change or vary any of
the investments of my estate, whether existing at my de-
cease, or made afterwards, as they shall see fit; and no
purchaser from my said trustees shall be under any obli-
gation to see to or enquire as to the application of any
purchase moneys.

"And in further trust for my said trustees to receive
and collect all the income of all said trust estate, and
after paying therefrom all taxes, rates and charges upon
or in respect to said estate, and all expenses of every
nature attending the executing of this trust, including a
reasonable compensation for my said trustees for their
own services, the balance to apply and pay over during
the continuance of this trust, as follows:

" Sixth. I hereby authorize and direct my said trus-
tees during the continuance of this trust, to pay out and
expend from said net income, such sum, not exceeding
twenty-five thousand dollars in any one year, as shall be
necessary to pay all taxes and assessments of every kind
upon or in respect of the said Warwick Neck Estate; to
keep the buildings on said estate in good order and repair
and properly insured against loss or damage by fire; to
keep the walls, gates, drives, walks and wharf on said
estate in good condition; to properly care for the trees,
shrubs, vines, plants and lawns upon said estate and re-
new the same from time to time; to maintain and operate
the water system on said estate; to heat the buildings
thereon and light the same and the walks and drives; to
operate the greenhouses on said estate, and purchase
supplies of all kinds for the same, and generally to keep

up and improve said estate as my said trustees shall deem best.

"I direct my said trustees to permit my said wife, Abby P. Aldrich, and my children to occupy said Warwick Neck Estate and to receive the benefits and products thereof, during the continuance of this trust free of any charge for the same.

"In case of any disagreement between them in relation to such occupation, benefits and products, my wife's decision shall be final during her lifetime, and after her decease the decision of my three oldest living children shall be final."

In this connection it is proper to call attention to the eleventh clause. The tenth clause provides for the termination of the trust and the distribution of the entire trust estate, as has already been pointed out, to and among seven of his children, and the issue then living of such of them as may have deceased, by representation. Then follows this clause:

"Eleventh. Without attempting in any way to restrict or control the ownership and conveyance of my Warwick Neck Estate after the distribution of my estate as hereinbefore provided, I express the hope that it may continue in the possession of some members or member of my family."

The testator by these provisions has very clearly indicated and expressed a general intention worked out in detail that his Warwick Neck Estate shall not be sold during the continuance of the trust and that while the trust continues it shall be very carefully looked after, kept up and improved. There is the restraint upon its sale and the general direction "to keep in good order and repair and properly insured" "the improvements upon the real estate" contained in the fifth clause, and the specific and detailed instructions in the sixth clause particularizing portions of the estate to be cared for and

in what manner, and finally indicating his confidence in the judgment and discretion of his trustees in respect to the keeping up and improving said Warwick Neck Estate by adding in conclusion the words, " and generally to keep up and improve said estate as my said trustees shall deem best."

That the maintenance, improvement and retention in his family of the Warwick Neck Estate were matters of great interest to the deceased is manifested by the large amount of money he spent therefor and thereon, by his reserving it from the power to sell given to the trustees, by the general and specific authority and directions as to its care, by providing for its occupancy by his wife and children and their enjoyment of its benefits and products during the continuance of the trust free of any charge, and finally in expressing the hope, that after the termination of the trust and the distribution of the trust estate, " that it may continue in the possession of some member or members of my family."

The statements in the bill admitted to be true by the respondents who are of age, as well as the testimony in the case, plainly show that under present conditions said estate cannot be maintained and kept up in accordance with the directions of the will by the annual expenditure of twenty-five thousand dollars, that is, under the existing conditions there is an irreconcilable inconsistency between the directions as to maintenance of the estate and the amount named as the maximum expenditure therefor. The question now presented is as to which intention or direction shall prevail.

The rule as to construction in such cases is well established, and is clearly stated in Woerner's American Law of Administration, Vol. 2, Sec. 416, as follows : " It is a familiar and very important rule, also, that the general (2) intention is to control the particular intention, if there be an irreconcilable inconsistency between them. Where, for

instance, the will directs a purpose to be accomplished, and also points out the means by which the result is to be reached, which means turn out to be inadequate to accomplish the end, so that the provisions cannot both be carried into effect, it is evident that the directions pointing out the means must be sacrificed to the accomplishment of the end, if the end can be accomplished by other means; for otherwise the testator's intention is entirely defeated.'' See, also, 40 Cyc. 1393; Redfield on Wills, Vol. 1, 433; Schouler on Wills, Sec. 468; 30 Am. & Eng. Encyc. of Law, 687; Jarman on Wills, Vol. 1, 575.

This rule has been recognized and applied in this State in *Pell* v. *Mercer,* 14 R. I. 412. In that case the testator had provided for the sale of all his shares of stock and the investment of the proceeds in bonds of the State of California, which were to be held on certain trusts. Owing to the paucity of such California bonds, the direction to sell and reinvest in them was not feasible. On page 430 the court says: '' The next of kin contend that, inasmuch as the stocks cannot be converted according to direction, there is as to them an intestacy. We do not think this conclusion follows. The rule is that where the general intent is clear, it will be carried out at the expense of any particular intent which cannot be carried out consistently with it, the paramount purpose being entitled to prevail. . . . In the case at bar the general intent or paramount purpose is clear and it can be carried out, not precisely in all respects in the manner indicated by the testator, but in a manner which is substantially as good. It seems clear to us, therefore, in accordance with the rules before mentioned or with the principles underlying them, that the general or paramount intent must not be permitted to fail merely because it is coupled with a particular or subsidiary intent which is impracticable. Indeed, the mere fact that the will is a will ought to be enough to save it from such miscarriage.'' See also

*Bailey* v. *Brown,* 19 R. I. 669, 681-686; *Kelly* v. *Dike,* 8 R. I. 436, 452; *Perry* v. *Brown,* 34 R. I. 203, 219.

In *Malcolm* v. *Malcolm,* 3 Cushing, 472, on page 477, the court says: " It is a familiar rule in the construction of wills that the intention of the testator is to govern, although it may be opposed to some of the words of the will; and that the general intention is to control any particular intention, especially when the particular intention relates to the manner by which the general intention is to be effectuated." This rule of construction has been frequently applied by both American and English courts.

In *Brown* v. *Berry,* 71 N. H. 241, the testator provided for annual payments from the net income of his estate of certain sums for the support of his son, his daughter and his grandchildren, and for the furnishing of means from said net income for the education of said grandchildren. There was no net income out of which such payments could be made, owing to the character of the property of which a somewhat large estate consisted. The trustees filed a bill for instructions as to whether they could make such payments from the principal of the estate. The court said on page 244: " The reading of the testator's will . . . leaves no room for doubt that his primary and controlling purpose was to provide for the proper and reasonable support of his children and grandchildren and for the thorough education of the latter ' at home or abroad, at proper institutions of learning.' For these objects he designated the net income of his large estate as the source of payment, and doubtless supposed (as he reasonably might) that it would be amply sufficient. For reasons which do not appear, there has ceased to be any net income. But this does not defeat the testator's purpose. The great weight of the competent evidence shows that he did not intend that his children should be without means of support, or his grandchildren without means of education, if for any reason the income should fail. His

leading purpose was that the necessary means should be furnished by his estate in any event. That this purpose cannot be executed in the particular manner he intended, affords no valid reason why it should not be executed at all. . . . We are, therefore, of opinion that the phrase, ' to pay out of and from the net income of my estate,' is to be construed rather by way of demonstration than condition,— rather as showing how or by what means the dominating idea of the testator may be effectuated than whether it shall not be effectuated in any other way. In other words, we construe the provisions for the support of the testator's children and for the education of his grandchildren as demonstrative and not specific, and consequently to be paid out of the fund he has pointed out, if possible, but otherwise from the general assets."
And see, also, *Ilsley* v. *Ilsley*, 80 Me. 23; *Thompson* v. *Young*, 25 Md. 450; *Elder* v. *Elder*, 50 Me. 535; *Williams* v. *Bradley*, 3 Allen, 270.

In *Griggs* v. *Gibson*, 14 W. R. 538, the trustees were directed to pay out from the rents and profits of the trust estate " not exceeding the clear annual sum of £400 for and towards the education " of a minor, and to accumulate the surplus income and invest the same in the purchase of other estates. The minor was entitled to occupy Easton Lodge, but there was no provision for the expense of keeping up Easton Lodge as a residence for the minor. The income of the trust estate was about £11,000 and it was represented that £4,000 would be required for the proper maintenance of Easton Lodge. Wood, V. C., said: " He had no doubt that the testator's intention was that Easton Lodge should not be let, but should be kept up as a place of residence for the person who should, from time to time, be entitled to the settled estates. The testator had clearly, over and over again, manifested this intention. . . . The allowance made for the beneficiary's maintenance, though sufficient for

that purpose, irrespective of keeping up any establishment for her, was wholly inadequate to keeping up a large mansion like Easton Lodge, with its park and pleasure grounds. Under these circumstances even if the persons entitled in remainder to the testator's settled estates had objected to the petitioner's present application, he should still have made an order that some additional sum should be allowed her, though he should feel it his duty to make a much more narrow inquiry as to the exact amount which it would be proper to allow her. As it was, however, there being no objection on the part of anyone as to the allowance, or as to the amount of the sum which had been mentioned as the proper and necessary sum, . . . he should make an order for the payment of the annual sum of £4,000 out of the rents of the testator's estates to the petitioner's guardian for the purpose of keeping up Easton Lodge with its park and pleasure grounds as a residence for the petitioner.''

*In re Walker*, 1 Ch. Div. L. R. (1901) 879, the testator devised real estate upon trusts under which A. became infant tenant in tail in possession. The will directed that the trustees should apply for the maintenance of the minor not exceeding in the whole, until the minor should attain the age of eighteen years, the sum of £500 in any one year, and for the residue of the minority the sum of £600 in any one year, and to accumulate and invest the surplus income. There was no provision for the maintenance of Sand Hutton Hall, the family residence, and the question was whether the court could authorize the trustees to keep up Sand Hutton Hall in the face of the directions for accumulation. The net income of the settled property exceeded £14,000. The court sanctioned a scheme allowing £4,000 per annum for the upkeep of the family mansion and the maintenance thereof of the infant in tail, saying, on page 885 : '' It is obvious that £500 per year is wholly inadequate to keep up Sand Hutton Hall. . . .

The question I have to consider is whether I can, on the true construction of the will, authorize the trustees to make any expenditure larger than the sum mentioned in the will. I decline to accept any suggestion that this court has an inherent jurisdiction to alter a man's will, because it thinks it beneficial. It seems to me that is quite impossible. But in considering what is the true construction of the will, it is open to the court to ascertain if there be a paramount intention expressed in the will, and if so, to consider whether particular directions are properly to be read as subordinate to such paramount intention or are to be treated as independent positive provisions. . . . I find in this will a paramount intention that the estate should be kept up, but no express provision made with respect to the mansion house; I find an allowance of £500 a year for the maintenance, education or benefit of the infant tenant in tail; and I find no negative words forbidding the trustees to exercise their discretionary power of managing the estate by keeping up the family mansion house as a home for the benefit of the infant tenant in tail and his family. I therefore hold that on the true construction of this will I can accede to the suggestion that is made to me," citing *Griggs* v. *Gibson, supra.* See, also, *In re Collins,* 32 Ch. Div. L. R. 229; *Havelock* v. *Havelock,* 17 Ch. Div. L. R. 807; *Greenwell* v. *Greenwell,* 5 Ves. Jr. 194.

In the present case we are, therefore, of the opinion that the particular intention limiting the amount to be annually spent for maintenance must give way to the very clearly and fully expressed general intention that the Warwick Neck Estate should be kept up and maintained in a careful and thorough manner. No doubt the amount named in the will when executed then seemed sufficiently large for future probable contingencies, and it is not to be presumed that Mr. Aldrich, keen student of economic questions as he was recognized to be, could

have anticipated the extraordinary increase in the expenditures necessary for the upkeep of so large a landed estate as his, which has resulted from conditions due largely to the unlooked-for and prolonged world-wide war now in progress. No question is made as to the sufficiency of the net income of the estate to provide adequate maintenance of the Warwick Neck Estate without injury to the rights of the beneficiaries under the will. In conformity with our interpretation of the testator's intention as above stated, we are of the opinion that said trustees should be authorized until further order of the court to expend from the income of said trust estate during the continuance of said trust such annual sum or sums as they, in the exercise of their reasonable discretion shall deem necessary for the maintenance and upkeep of said Warwick Neck Estate, provided that the sum or sums so expended annually shall not exceed a total amount of forty-five thousand dollars, said sum being the largest one named in the testimony as essential for proper maintenance.

A decree in accordance with this opinion may be presented to this court on Monday, June 4, 1917, at 10 o'clock A. M.

*Green, Hinckley & Allen,* for complainants and respondents.

*Theodore Francis Green, Frederick W. Tillinghast, Harold P. Salisbury,* of counsel.

*George Hurley,* for himself as guardian *ad litem.*