The opinion of the Court was drawn up by
Gootxenow, J.
The demurrer admits the facts stated in the bill. The 9th and 10th sections of c. 68, R. S., give this Court power to determine all matters relating to testamentary trustees. If the plaintiff* is entitled to any relief, it is a case within the jurisdiction of the Court. She holds the estate in trust, not only for herself, but for all the chil *542 dren. She might have waived the provision made for her in the will, and claimed her dower in the real estate, and applied to the Judge of Probate for an allowance from the personal estate. This might have been better for her than to have abided by the will. She deferred to what she considered the bettor judgment of her husband. He, perhaps, made the same mistake that thousands had done before him, estimated his property too highly. He did not consider how much his own personal services would be missed, in supporting his family and keeping them together; an object, manifestly, very near his heart. But he did not proportion5 the means to the end.
He desired all his children to share equally, after providing for his widow and paying his debts. He treated the support and education of his elder children, who were of age, and had found a home in his family till of age, as advancements, and wished all his minor children to have an equivalent in the same way, by having a home in his family after his decease. This was just and laudable. His estate, at the time of his decease, amounted to the sum of $7589,44, the real estate was appraised at $6800, a portion of which was encumbered by a mortgage of $500, and is still so encumbered. His debts, at the time of his decease, amounted to $1050, including the debt secured by said mortgage.
He left two children of ago, at the time of his decease, and five under age, whose ages and names are stated in the bill; Charles, the youngest and last named, is the son of the complainant; the other six are his children by a former wife. The real estate consisted of two house lots with houses thereon, in Portland, one of the houses containing two tenements. Since the decease of the testator the complainant has been obliged to make expensive and indispensable repairs upon the single dwellinghouse, in order to put the same into a tenantable condition, so as to derive any income therefrom. The complainant, out of such means as have been at her command, and by incurring new debts on her own account therefor, has made those repairs, and has *543 also paid, of the debts due from the testator, an amount exceeding two hundred dollars; and there are now more than three hundred dollars of the proper debts of the testator remaining unpaid.
Since the decease of the testator the complainant has resided, and now continues to reside, in the tenement owned and occupied by him in his lifetime, and has thus kept and maintained, a home for his minor children, and has faithfully and diligently applied all the available income of the estate towards their assistance and support, as required by the testamentary provisions aforesaid, and, over and above the amount of such income, has incurred debts on her own account for their support. .
The complainant further shows, that Peter Elder has been duly appointed guardian of said minor children, and has accepted the trust, but that said minor children have no property or estate whatever, to her knowledge, other than the beneficial estate of their father, before described; that she is seized in her own right of a small parcel of real estate in Portland, which usually yields a net income of about $150; that she is the mother of four children, now living, by a former husband, two of whom are minors dependent on her for their support; that she had not, at the decease of the testator, any other property, and has not now, other than her interest in the estate of the testator; that the largest annual income which she has been able to derive from the productive estate of her testator, has not amounted to the siim of $350; and that she does not believe any greater income can be obtained from it. She avers that she has exerted herself with the utmost fidelity and diligence to carry out the testamentary trusts, and has practiced all reasonable economy; but alleges that the income of said estate, in its best condition, is wholly inadequate for the purpose; and that her efforts, during the three years past, to maintain the family, and discharge the other burdens imposed upon her, out of said income, have involved her in great perplexity, anxiety and care, destroying her comfort, and threatening *544 seriously to impair her health; that she has never waived the provisions made for her in the will and codicil, nor claimed her dower, or an allowance, or other personal benefit out of said estate to her separate use.
These are the material facts, admitted by the demurrer. It furnishes, in my opinion, a strong case for relief, if this Court has the power to give it.
It was a leading object with the testator, that his family should be kept together, after his decease, as they had been in his lifetime; but it is most manifest that he did not. provide the adequate means. By his codicil, he provides for an earlier division of the estate among his children, by some ten years; that is, when Samuel becomes of age, in June, 1867, instead of the time when Charles, the youngest, would become of age, in February, 1877. But as Charles would lose thereby the benefit of a home for some ten years, which all the other children would have received, he gives him, "on account of his youth,” the sum of two.hundred dollars to be paid from his estate, in the year 1867, to be put at interest for his benefit, he not to come into the possession of the same until he shall arrive at the age of twenty-one years. This sum was to be in addition to his distributive share of the estate. From this, we may understand what the testator considered the pecuniary value to each child, of the privilege of a home at his mansion house, after his decease. If the property should be finally divided in 1867, instead of 1877, Charles would lose this privilege, for about ten years. The testator’s estimate of the value would seem to be about twenty dollars per year.
Joseph P., was born in March, 1839, of age, March, 1860; Leonard, bom February, 1842, of age, February, 1863; Sarah, born August, 1844, of age, August, 1865; Samuel, born June, 1846, of age, June, 1867; Charles, born February, 1856, of age, February, 1877..
The three oldest children have received the full benefit of a home, till they were of age.
The four youngest are minors, according to their respec *545 tive ages, in different amounts. Under these circumstances, what would the testator have done, if he could speak? If a portion of the estate could not be sold to meet these imperative demands, without an injury to the sale or value of the residue, he would probably direct the whole to be sold, and, after paying all the debts and claims upon it, and making the minor children equal with those of age, have the balance divided equally among all the children. But, as some of these minors may die, before they become of age, and their shares fall into the general fund, it would be more in conformity with the intent of the testator, to break in upon the principal, and appropriate only so much of it as is necessary to make up for the deficiency of the income, and as far as possible follow out the design of the testator, by keeping 'the family together. Has the Court the power to direct the trustee to accomplish this ?
It needs no citation of authorities to show, that, in the construction of a will, the intention of the testator is to be effectuated, if it can be .done consistently with the rules of law.
And when the particular intent cannot be executed, the general intent must direct the construction. 8 Mass., 3. The first sentence in the will under consideration discloses, unmistakably, the intention of the testator. "I, having a family of wife and children, whom I have kept together, until some of my children have arrived at the age of twenty-one years and capable of supporting themselves, and wishing that my minor children may have the same privilege and assistance, that the older children have enjoyed, my will is,” Sc. The "income” of the estate left by the testator is appropriated to the assistance and support of the minors that shall remain at home. "The natural moaning of raising a portion by rents, issues and profits, is by the yearly profits; but, to prevent an inconvenience, the word profits has, in some particular instances, been extended to any profits which the land will yield by sale or mortgage.” 2 Piere Williams, 19. The same doctrine is held in Sheldon & ux. *546 v. Dormer, 2 Vernon, 310. In Heycock v. Heycock, 1 Vernon, 256, "the Lord Keeper declared, he took it to be the law of this Court, that where there is a devise of a sum certain to be raised out of the profits of lands; if the profits will not amount to raise the sum in a convenient time, the Oourt will decree a sale.” See also, Sumner’s edition of Vesey, jr., vol. 1, p. 234, and cases there cited.
It was manifestly the intention of the testator, " that the privilege and assistance” of his minor children, till they should be able to support themselves, should be secured by a charge on the estate, before any division should be made.
There is a class of cases, where the amount ultimately to go to the beneficiary, is, under .the direction of the Court, to be broken in upon for his necessary advantage meanwhile. Barlow v. Grant, 1 Vernon, 255. "Upon a bill for £100, legacy given to a child, the defendant insisted upon an allowance of £10 a year, for keeping the legatee at school. It was objected that only the bare interest of the money ought to have been expended in his education, and not to have sunk the principal, as in this case the defendant had done. But the Lord Keeper thought it fit and reasonable to be allowed, and said the money laid out in the child’s education was most advantageous and beneficial to the infant, and therefore he should make no scruple in breaking into the principal, when so small a sum was devised that the interest.thereof would not suffice to give the legatee a competent maintenance and education; but, in case of a legacy of a £1000, or the like, then it might be reasonable to restrain the maintenance to the interest of the money.” See Harvey v. Harvey, 2 P. Williams, 21. The Master of the Rolls observed, that these being vested legacies, and no devise over, it would be extremely hard that the children starve, when entitled, to so considerable legacies, for the sake of their executoi's or administrators, who, in case of their death, would have the said legacies. That, in this case, the Court would do what, in common presumption, the father if living would, nay ought to have done, which was, *547 to provide necessaries for his children. That a Court of equity would make hard shifts for the provision of children, whore younger children were left destitute, &c. "Every one must suppose it to have been the intention of the father, that ¡lis children should not want bread during their infancy.”
A second class includes those cases where the money to be expended for the beneficiary, is taken to the diminution of that amount which is to go over to other persons. This is a case, where, by granting a sale of a part of the estate to relieve the trustee of immediate present claims, there will be a diminution of the amount which was to go over to the minor childen, as well as to those of full age. See Trafford v. Ashton, 1 P. Williams, 416. "The questions were, first, whether £8000 should be raised otherwise than out of the yearly rents or profits, or by sale or mortgage.” It was decreed that the portions should be raised by sale or mortgage, as should be agreed by the master and the parties.
The testator no doubt expected that his minor children would, by their services, contribute something, according to their respective ages and ability, towards their own support or maintenance. Twenty dollars per year, would be a sum entirely inadequate for the support of any one of them. The complainant, to whose care they were committed by the testator, is not at liberty to disregard one of the primary laws of nature. That she did not waive the poor provision made for her in the will, and claim her dower and an allowance out of the personal estate, and thereby greatly diminish the shares of the children, deserves anything but reproach. If relief can be granted in any form, the demurrer must be overruled. It is not necessary in this stage of the case, to indicate the "mode and measure.”
Upon a careful consideration of the case I have arrived at the conclusion that relief can be had consistently with the established rules of law.
Demurrer overruled. — Defendants to answer.
Tenney, C. J., Appleton, May and Davis, JJ., concurred.
*548 Davis, J.
It is apparent that the primary intention of the testator, to which all others were subsidiary, was that, during the minority of his children, his dwelling should continue to he a home for his family, as it had been during his own lifetime. To carry out this intention, he bequeathed the "income” of his property, to be "under the control and management of his wife.”
According to the case stated in the bill, the income of the property is not sufficient to effectuate this intention of the testator, unless we give the word that enlarged meaning which will allow, in case of necessity, a portion of the property to be sold. Property may yield an income by a sale; and it will be no violation of well settled principles in equity proceedings, when absolutely necessary in order to carry out the. purpose of the testator, to give the word that signification. It is a reasonable presumption that he intended, in case the annual rents of the other property, besides the dwellinghouse, should not be sufficient to provide a home for the children during their minority, that a portion of it should be sold for that purpose.
Such being the constru'ction of the will, the executrix, though not expressly appointed a trustee therein, became such by virtue of its provisions, by operation of law. R. S., c. 68, § 12; c. 78, § 8. Having given the bond required of testamentary trustees, she is duly authorized to act in that capacity. Deering v. Adams, 37 Maine, 264.
Whether the complainant, in her capacity as such trustee, ought to be authorized to sell any portion of the property,' cannot be finally determined at this stage of the case.