HENRY HOOPER *vs.* ELIZA B. BRADBURY.

Essex. Nov. 3, 1881. — Sept. 7, 1882. MORTON, C. J., W. ALLEN & C. ALLEN, JJ., absent.

A testator gave to his wife real and personal property for life, which on her death was to be equally divided between his son and his daughters E. and M.; and the will further provided as follows : "The part coming to E., I wish placed in trust, and at her decease, if she leaves no children, paid to her sister M." After the death of the widow, the executor settled his account in the Probate Court, showing a balance of personal property in his hands to be divided. *Held,* that the will created a valid trust; and that a trustee should be appointed for the personal property only.

APPEAL from a decree of the Probate Court, refusing to grant the petition of the appellant to be appointed trustee of the estate devised by Henry Hooper, for the use and benefit of the appellee, his daughter. Hearing before *Endicott,* J., who reported the case for the consideration of the full court, in substance as follows :

The petition was disallowed by the Probate Court on the sole ground that the will of the deceased did not create a valid trust, and that no occasion existed for the appointment of a trustee.

The material parts of the will were as follows : " First. I give to my wife Harriet, during her life, the use and occupancy of my dwelling-house, with all the buildings and land attached to the same, together with all the plate, furniture, and all other materials, in and about the house, with liberty to sell the same, if she thinks it is for her and the children's interest.

" Second. I also give my wife Harriet the income of all my property, with liberty to sell the same, if the income is not sufficient for her and the children's support.

" Third. After the decease of my said wife Harriet, all that remains of my property, real and personal, is to be equally divided between my son Henry, Eliza and Mary Susan.

" Fourth. The part coming to Eliza, I wish placed in trust, and at her decease, if she leaves no children, paid to her sister Mary Susan."

The widow of the testator has died, and his executor has settled his account in the Probate Court, showing a balance of personal property in his hands to be divided.

The judge reversed the decree of the Probate Court, and directed that the case be remitted to that court for further proceedings on the petition.

*S. B. Ives, Jr.*, for the appellant.

*T. M. Osborne*, (*W. D. Northend* with him,) for the appellee.

FIELD, J.    The report finds that the executor's accounts show a balance of personal property in his hands to be divided under the third and fourth clauses of the will.    It is said in argument, that there is also land devised by these clauses.

The legal effect of the third clause standing alone would be to give to Henry, Eliza and Mary Susan each absolutely one undivided third part of the personal property, and an estate in fee simple in an undivided third part of the real property, provided the testator had an estate in fee simple in it which he could devise.    Gen. Sts. *c.* 92, § 5.    *Lincoln* v. *Lincoln*, 107 Mass. 590.    *Crossman* v. *Field*, 119 Mass. 170.

By the fourth clause it is manifest that the testator intended that " the part coming to Eliza " should be paid or conveyed to Mary Susan at the decease of Eliza, if she left no children.    It was the definite failure of children at the decease of Eliza, and not an indefinite failure of issue, that the testator had in mind, and it was at the decease of Eliza that the limitation over to Mary Susan was to take effect, if at all.    The two clauses taken together would vest in Eliza an estate in fee simple in land, determinable in the event of her dying leaving no children then alive, with an executory devise over to her sister Mary Susan.    *Schmaunz* v. *Göss*, 132 Mass. 141.    *Symmes* v. *Moulton*,

120 Mass. 343. *Whitcomb* v. *Taylor*, 122 Mass. 243. *Bright-man* v. *Brightman*, 100 Mass. 238. *Ide* v. *Ide*, 5 Mass. 500. *Richardson* v. *Noyes*, 2 Mass. 56. Of such an estate Eliza would have the right of alienation, subject to the executory devise, and would be entitled to the immediate possession and use.

It has been argued that the effect of this construction of the two clauses, if applied to the personal estate, is to give to Eliza the absolute property in that, because it is said that "there is no such thing as an executory devise of personalty after a fee simple." The courts of England, which favor the creation of estates tail by implication, have not always given the same construction to language when applied to personal property as when applied to land. But in *Hall* v. *Priest*, 6 Gray, 18, 22, this court say, "In a case like the present, where personal and real estate are given by the same clause, and in the same words, and there is nothing to indicate a different intent on the part of the testator, in relation to his personal estate, from that manifested respecting his real estate, we are of opinion that the words are to be construed in the same manner, as applicable to both species of property."

It might perhaps be contended that by the fourth clause, and particularly by the use of the word "paid," the testator had manifested a different intention with regard to the personal estate from that shown in regard to the real, and that he meant to give in his personal estate a life interest to Eliza, with remainder to her children if she died leaving children, and if not, with remainder to her sister Mary Susan; but we are not satisfied that the testator intended to make any distinction in the rights of property given in the real and personal estate.

In *Albee* v. *Carpenter*, 12 Cush. 382, Chief Justice Shaw says: "We have no doubt that personal property may be given to one for life, with a remainder to another absolutely. But it is a fixed rule of law, that personal property cannot be given to one in tail with remainder over, nor can an executory bequest be made to take effect upon the termination of an estate tail, because it is too remote. *Nightingale* v. *Burrell*, 15 Pick. 104. It will be found, we believe, in all the cases, that where a gift over of personal estate has been maintained, it is where the gift to the first taker is, by the terms of the bequest, not exceeding a gift for

life. *Ellis* v. *Essex Merrimack Bridge*, 2 Pick. 243. *Homer* v. *Shelton*, 2 Met. 194, and the cases there cited." But in *Homer* v. *Shelton* the interest of the plaintiff in the personal property was that of absolute ownership, determinable on a contingency that must happen, if at all, at his death, with a limitation over, and this, by a majority of the court, was held valid, and the money was ordered to be paid to the plaintiff, to be held by him subject to the limitation.

The want of permanency in the condition of different kinds of personal property has occasioned much difficulty in construing bequests of future interests in chattels personal. Without considering such bequests, and having in view only general bequests of personal property or money, it is the general rule, that, by means of an express trust, personal property may be subjected to any limitations not inconsistent with the rule against perpetuities, and we think it is established that, by or without creating an express trust, an executory bequest of personal property to take effect on a contingency that must happen, if at all, on the death of the first taker, may be a valid bequest. *Homer* v. *Shelton*, *ubi supra*. *Moffat* v. *Strong*, 10 Johns. 12. *Condict* v. *King*, 2 Beas. 375. *Rowe* v. *White*, 1 C. E. Green, 411. *Tyson* v. *Blake*, 22 N. Y. 558. *Eichelberger* v. *Barnetz*, 17 S. & R. 293. The limitation over in bequests of personal property has often been held void by reason of the right of absolute disposal of the property given to the first taker, because the gift over is inconsistent with the rights of property and of control over it first given. *Ide* v. *Ide*, 5 Mass. 500. *Burbank* v. *Whitney*, 24 Pick. 146. *Merrill* v. *Emery*, 10 Pick. 507. *Wells* v. *Doane*, 3 Gray, 201. *Holmes* v. *Godson*, 8 DeG., M. & G. 152.

But a gift of a right of property generally, unaccompanied with any right of possession, control and disposal of the property, is not inconsistent with a limitation over on the happening of a future contingency; and, in the case at bar, it is apparent that the testator did not intend that Eliza should have the right to dispose of the principal of the personal property to her own use in her lifetime, and the limitation over cannot be held void on that ground.

In the following cases, the property was given generally, and was ordered by the court to be paid over to the first taker,

without deciding whether the limitation over was valid or not. *Fiske* v. *Cobb*, 6 Gray, 144. *McCarty* v. *Cosgrove*, 101 Mass. 124. *Taggard* v. *Piper*, 118 Mass. 315. *Bradlee* v. *Appleton*, 16 Gray, 575.

It is indeed said in *Taggard* v. *Piper:* "We are of opinion that no trust was created by these provisions. The case is governed by *Fiske* v. *Cobb*, 6 Gray, 144, where it was held that if a legacy is given generally, but subject to a limitation over, on the subsequent condition of the legatee dying without issue, it is to be paid to him without security, unless it is made to appear that there is danger of his wasting, secreting or removing the property. No such question is raised here. It is therefore unnecessary to consider many of the points argued at the bar upon the effect to be given to the provisions of the twelfth clause." The question was whether his share of the personal estate should be paid to William T. Piper or to a trustee, and the court decided that it should be paid to Piper, and did not consider whether or not he would hold the property subject to any trust created by the twelfth clause of the will, because, if he did so hold it, no case was made out for requiring of him security that he would not waste, secrete or remove the property. The expression, "we are of opinion that no trust was created," in the connection in which it is used, must mean that there was no occasion for the appointment of a trustee.

In all general bequests of personal property, where the use of articles *in specie* is not intended to be given, and there are future interests in it which the law recognizes, a trust of some kind is necessarily implied, whether the property remains in the hands of the executors, or is put into the hands of the first taker, or of a trustee strictly so called. In general bequests of money or personal property for life, with remainder over, the legatee takes the interest or income only, and, in the absence of any expressed intention to the contrary, the property is either paid to a trustee or held by the executor as trustee. *Field* v. *Hitchcock*, 17 Pick. 182. *Homer* v. *Shelton*, *ubi supra*.

But when the first taker is the owner, subject to a contingent limitation over on the happening of a subsequent event, the money is usually paid to him, because it is his, and the contingency may not occur; but, if there is danger that he will waste

# 308

it, security for its preservation may be required for the benefit of the future contingent interest, and, if he will not give the security required, the court would probably appoint a trustee and take the funds out of his hands. *Fiske* v. *Cobb, ubi supra. Clarke* v. *Terry,* 34 Conn. 176. The ground of this distinction in the two cases is the presumed intention of the testator. *Rowe* v. *White,* 1 C. E. Green, 411. *Pickering* v. *Pickering,* 4 Myl. & Cr. 289. *Collins* v. *Collins,* 2 Myl. & K. 703.

And where, in a bequest of personal property generally, with a valid limitation over on the happening of a contingency, it is clearly the intention of the testator that the first taker should not have the possession of the property, but that it should be placed in the hands of a trustee, that intention should be carried out. Such a trust is not novel. The statutes of this Commonwealth provide for the sale and conveyance in fee simple of real estate which is subject to a contingent remainder, executory devise, or power of appointment, and the appointment of a trustee to receive, hold, invest and apply the proceeds of the sale for the benefit of the persons who would have been entitled to the real estate if such sale had not been made. Pub. Sts. c. 120, §§ 19–21. The beneficial owner under such a trust would be entitled to the income until the contingency happened, as the owner of the land would be entitled to the rent, issues and profits of it, and, when the happening of the contingency became impossible, would be entitled absolutely to the fund.

We think that the testator, by the fourth clause of his will, has clearly expressed his intention that a trustee should be appointed. As a trustee of the land is unnecessary, a trustee should be appointed for the personal property only, without considering whether, by the peculiar phraseology of this clause, such was not the intention of the testator.

The decree of the justice of this court, reversing the decree of the Probate Court, must be affirmed, and the cause remitted to the Probate Court for further proceedings, in accordance with this opinion. *Ordered accordingly.*