Edwin A. Potter, Receiver, etc. v. William E. Mortimer, et al.

Gen. No. 11,344.

1. CORPUS—*when bequest does not convey.* Where from the terms of a bequest it can be seen that the testator intended to bestow upon his legatee an income only, the corpus from which such income is to be derived is not conveyed to such legatee.

2. STOCKHOLDER'S LIABILITY—*when, cannot be enforced against legatee.* A stockholder's liability imposed by statute cannot be enforced against the beneficiary of the earnings of such stock where the bequest to him did not constitute a segregation of such stock.

3. STOCKHOLDER'S LIABILITY—*when, may be enforced against distributees of estate.* Where an executor, knowing of the existence of a claim against the decedent by virtue of his being a stockholder of a national bank, distributes the estate and the distributees each receive a sum in excess of the amount of such liability, the same can be enforced in an action against them.

4. STOCKHOLDER'S LIABILITY—*when, may be enforced against executor.* Where an executor, knowing of the existence of a claim against his decedent on account of his being a stockholder in a national bank, distributes his entire estate, he is, ultimately, personally liable to the receiver for such national bank.

Proceeding to enforce stockholder's liability. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded with directions. Opinion filed June 9, 1904.

**Statement by the Court.** Appellant, as receiver of the National Bank of Illinois, filed a bill against appellees, alleging, among other things, the failure of the bank December 21, 1896, and the appointment of a receiver therefor on that date, and that March 1, 1900, appellant succeeded by appointment to such receivership; that March 14, 1899, the comptroller of the currency decided to enforce the

stockholders' liability, and levied an assessment of 100 per cent, payable April 14, 1899; that Charles Kavanagh, during his lifetime, owned ten shares of such stock, of the par value of $100 per share; that he died in April, 1873, and his estate was probated; that under his will his widow, Lydia Kavanagh, and said William E. Mortimer were appointed as trustees of the estate, and were such at the time said assessment was levied; that said Lydia died August 24, 1899, testate, naming said Mary E. Holden as her executrix; that said Mary was discharged as such executrix in March, 1902, whereupon said Mortimer, sole surviving trustee of the estate of said Charles Kavanagh, deceased, and said Mary E. Holden, distributed all of the assets of said estate among the beneficiaries under his will, without having first paid said assessment; that among the beneficiaries under said will are the appellees, excepting said Mortimer; that under the will said Lydia was donee of power of appointment of $10,000, and that said power was exercised in favor of said Mary, who became the distributee of said fund; that there is due appellant $1,000 with interest from April 14, 1899.

The prayer is for an accounting, and for a decree subjecting the assets of the estate in the hands of the trustee at the time of the levying of the assessment to the payment thereof, and for payment by the distributees of their share of said assets to appellant, and for general relief.

The answer of the appellees admits that the deceased, in his lifetime, was the owner of such stock; but declares that by the acceptance by the widow of the third clause of said will the stock was segregated from the general body of the estate, whereby she alone became liable for assessments thereon. Admits the death of said widow, leaving a will in which said Mary was sole executrix, legatee and devisee; that the will of said Lydia was probated November 27, 1899, and appellant made no claim against said estate, and such claim is now barred. Denies that the estate of Charles Kavanagh is liable, and prays for dismissal, etc.

The third clause of said will reads:

"To pay unto my said wife from the time of my decease, as long as she shall live, an annuity of $2,000 a year, and also all dividends that may be declared during the time last mentioned upon the ten shares of stock in the National Bank of Illinois now owned by me."

The will provided for the distribution of the residuum of the estate. It makes the widow and said Mortimer executrix and executor, and devises to them all of said estate "in trust," etc.

The cause was heard upon an agreed state of facts, which followed in general terms the allegations of the bill and answer. It also contained the following admission:

"After the death of Mrs. Kavanagh, defendant William E. Mortimer, as surviving trustee, paid the defendant, Mary E. Holden, the sum of ten thousand dollars, appointed as above stated, and he distributed the residuum of the estate among the three institutions, Chicago Home for the Friendless, Chicago Relief and Aid Society and the Chicago Athenæum, that being the same institution as was named in the will Chicago Christian Union, the name having been duly and regularly changed. In this distribution each of the institutions received from the estate more than the sum of fifteen hundred dollars."

The decree recites the facts as agreed upon, and dismisses the bill for want of equity at the costs of appellant. From this decree the present appeal was perfected.

ELMER H. ADAMS, for appellant; EDMUND W. FROEHLICH, of counsel.

KERR & KERR, for appellees.

MR. JUSTICE BALL delivered the opinion of the court.

The question which arises is this: Was the bank stock segregated from the general body of the estate upon the acceptance by the widow of the bequests contained in the third clause of the will? The intention of the testator determined this question, and that intention is to be gathered from the will. The third clause of that instrument gave her an annuity of $2,000 per year, and also gave her all

dividends that might be declared upon such bank stock. These two bequests are so closely connected that it is apparent the testator intended to bestow upon her an income only. This clause did not by its terms vest in her the legal or equitable title of the stock. It transferred to her nothing more than the dividends which might be declared thereon. It gave her no power to vote the stock, or to mortgage it, or to sell it. It is evident that the testator intended the corpus was to remain intact, and that his widow was to have its earnings only.

In Parker's Exrs. v. Moore, 25 N. J. E. 228, the deceased by his will provided for each of his daughters in the following manner: "I bequeath to her the sum of $50,000, the interest of which shall be paid to her during her life, and the principal to her children at her decease." Under this bequest each of the daughters claimed to be entitled to the principal of the funds from which the interest bequeathed to her was to be derived, especially as to the legacy of a specific sum of money. The chancellor decided against this contention, saying: "The gift of the interest of a sum of money does not pass the whole fund itself, if there are words used to confine it to a life estate. Clough v. Wynne, 2 Madd. 188, 434; Roper on Legacies, 1476. Says Roper, p. 1478: 'But, notwithstanding, as a general rule, the gift of interest and dividends standing by itself, is a gift of the corpus, yet, if, from the nature of the subject, or the context of the will, it appears that the produce or interest of the fund only was intended for the legatee, the gift of the interest will not pass the principal.' Under the will these legatees to whom the interest is given for life cannot claim the fund on the ground that the gift of the interest passes the principal."

In Hooper v. Bradbury, 133 Mass. 307, the rule is laid down in these words: "In general bequests of money or personal property for life, with remainder over, the legatee takes the interest or income only, and in the absence of any expressed intention to the contrary, the property is either paid to a trustee or held by the executor as trustee."

Under the terms and conditions of this will this bank stock did not become segregated, but remained a part of the general estate of the deceased. It follows that the estate of the widow was not liable for the assessment; and therefore the fact that no claim was filed against her estate is immaterial.

In Earle v. Rogers, 105 Fed. Rep. 208, one clause of the will of the deceased read: "That part of my estate which shall on final settlement be found to be coming to my daughter, Anna R. Ewing, to remain in the hands of my executors, to be invested in stocks, bonds, or lands, to the best advantage, for her benefit, she to draw the interest and dividends so long as she lives, and at her death this part of her estate held in reserve by my executors to revert back to my estate; she having only a life estate in what was held in reserve by my executors." The executors set apart as a portion of the daughter's share certain national bank stock, and caused the same to be transferred to themselves as "trustee." When the general estate was called upon to pay the stock liability, the executors claimed that it should be paid out of the particular trust estate, and not out of the general estate. But the court held that, under the will, the executors could not effectually transfer this stock to themselves, or to any other person, as trustees, and that the general estate was liable. So here, the bank stock remained in the hands of the sole executor as a part of the general estate. It was thus held and owned at the time the bank failed, and continued to be thus held and owned until months after the liability to pay the assessment was fixed and the time to pay the same had passed. In our opinion this stock liability is a charge upon the general estate, and should have been paid therefrom. The sole executor, Mortimer, after he knew that the claim made by appellant was due and payable, divided the entire remaining estate between the other appellees according to the terms of the will. It also appears that each of the devisees received a sum of money in excess of the claim of appellant, with interest thereon from April 14, 1899. The

statutes of the United States, sections 5151 and 5152, fixed this lien upon the remaining assets of the estate, and the legatees having received those assets, subject to that lien, the claim can be enforced by a direct proceeding against them. Witters v. Sowles, 32 Fed. Rep. 130. The sole executor, Mortimer, having, by his own wrong, divested himself wholly of this estate without providing for the payment of this claim, is ultimately liable for its liquidation. It follows that the decree of the Superior Court must be and it is reversed, and the cause remanded with directions to that court to enter a decree for the payment of the claim of appellant, being the sum of $1,000, with legal interest from April 14, 1899, to the time of entering the decree. The evidence showing that no part of the estate of Charles Kavanagh, deceased, now remains in the hands or under the control of the executor, the decree will further provide that said claim be paid by said Mary E. Holden, Chicago Home for the Friendless, Chicago Relief & Aid Society, and the Chicago Athenæum, or by one or more of them, within ten days from the time of entering the decree, and that in default of such payment execution therefor issue against them and each of them, and that if it be not thus paid said decree shall provide that said Mortimer pay. the same within such time as the court shall fix, and that in default of such payment execution issue therefor against him.

*Reversed and remanded with directions.*