SAMUEL D. CONANT, administrator, *vs.* JOHN N. ST. JOHN & others.

Franklin.   September 16, 1919. — October 9, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, & CARROLL, JJ.

*Trust,* Construction, Termination, Conversion of real estate.   *Words,* "Legal representatives."

The will of a testatrix contained the following provision: "I . . . give and bequeath all my property, both real and personal, to my husband . . . him to have and to hold full use of same during his lifetime, and after his death . . . he is to divide all such within named property equally between all our children still living after his death. . . . In case any or all of our children die previous to our departure from this world, then, the property or its value is to be left to their children in same proportions as though they themselves were to receive it; were they still living." All the children were living and signed an instrument consenting to the sale by their father of real and personal property in which they agreed to join, and providing that after certain payments the balance of the proceeds should be deposited by their father with a certain trust company under a trust agreement to be entered into between him and the trust company by which the trust company should hold the fund in trust to pay to their father the net income thereof and "at his death to his legal representatives." The deposit was made and the agreement between the father and the trust company contained a provision that upon his death the trustee should pay the principal of the fund to his legal representatives "freed from all trusts." The father married again and died intestate leaving his second wife as his widow and all his children living. *Held,* that the will created a trust for the benefit of the husband of the testatrix during his life with a remainder to the children, which might be contingent, but that, whether it was contingent or vested, the instrument signed by the children with their father, providing that at the death of their father the money should be paid "to his legal representatives," was in conformity in substance to the provisions of the will and did not change the terms of the trust created by it.

In the case above described it also was *held* that the provision in the agreement between the father and the trust company, that at his death the fund should be paid over to his legal representatives "freed from all trusts," did not affect the rights of the children, who were not parties to that agreement.

In the case above described it was *ordered* that the fund should be distributed among the children to the exclusion of the widow.

In the case above described it appeared that the father and children in "converting" the real estate into money and impressing it with a trust did so without resorting to proceedings in the Probate Court under R. L. c. 127, §§ 28, 29, 31, as amended by St. 1917, c. 306. They appeared to have commingled the proceeds of the real and personal estate in a single fund, but it was *said* that, even if the fund came from the proceeds of the real estate alone, the inference was inevitable that the trust with which it was impressed was the same to which,

if the terms of the statute had been followed, it ought to have been and would have been made subject.

In the same case it was *pointed out* that the husband and children had no right to terminate the trust as to the personal property nor as to the proceeds of the real estate, which had been made a part of the trust.

BILL IN EQUITY, filed in the Probate Court for the county of Franklin on June 4, 1917, by the administrator of the estate of Nelson St. John, late of Greenfield, for instructions, as stated in the opinion.

The Probate Court made a decree ordering that the fund of $5,090 in question be paid to the legal representatives of Nelson St. John, without qualification, and not directly to his children, and that the widow was entitled to share in the distribution.

On appeal to the Supreme Judicial Court the case was heard by *Crosby, J.*, who made a decree affirming the decree of the Probate Court. The respondents other than the widow appealed.

*F. J. Lawler*, for the children of Caroline and Nelson St. John.

*C. Fairhurst*, (*W. A. Davenport* with him,) for Mildred M. St. John, widow of Nelson St. John.

RUGG, C. J. This is a petition brought by the administrator of the estate of Nelson St. John for instructions as to the disposition to be made of the sum of $5,090, together with $209.92 of accrued interest, now in his hands. The history of that sum of money is this: Caroline St. John, wife of Nelson, died testate in 1909. Her will was seasonably admitted to probate and its provisions were not waived by her husband. Its terms, so far as now material, were these: "I . . . give and bequeath all my property, both real and personal, to my husband Nelson St. Jean him to have and to hold full use of same during his lifetime, and after his death . . . he is to divide all such within named property equally between all our children still living after his death. . . . In case any or all of our children die previous to our departure from this world, then, the property or its value is to be left to their children in same proportions as though they themselves were to receive it; were they still living." A part of her estate was a farm in Fiskdale, a village in Sturbridge. After the allowance of the will, all the children of the testatrix in 1910 executed an agreement which, so far as now relevant, was in these words: "W hereby consent that our Father, Nelson St. John shall sell

home place in said Fiskdale, owned and occupied by our Mother, and we are signing the requisite deeds and bill of sale to him so that he may pass a good title thereto to the purchasers, the price for the real and personal estate to be Nine Thousand Dollars, and out of said sum the following payments shall be made,—the mortgage held by the Southbridge Savings Bank of $1200.,—the sum of $600., to Frank N. St. John, the sum of Two Thousand Dollars to our said Father, Nelson St. John, and the necessary legal expenses of the proceedings, and the balance shall be received by Henry B. Montague, of Southbridge, in said County, the attorney in the proceeding, and by him deposited with the Springfield Safe Deposit & Trust Company of Springfield, Mass., under a trust agreement to be entered into between said Nelson St. John and said Trust Company, that said Trust Company shall hold the amount so paid over to them by said Montague in trust to pay said Nelson St. John the net income thereof semi-annually during his natural life and at his death to his legal representatives, provided that, if the children, or the legal representatives of any deceased child, shall all assent in writing, our said Father may terminate the trust as provided in the agreement with said Trust Company. This agreement is hereby expressly entered into by all the children and heirs of said Caroline St. John so that the sale of the home place may be made and the proceeds thereof disposed of as is herein provided." The property was sold and the deed was signed by the father and all the children. The balance of the proceeds from this sale, after paying a mortgage and making other disbursements, amounting to $5,090, was deposited with the Springfield Safe Deposit and Trust Company under an agreement of the tenor following: "This is to certify, that I, Nelson St. John, of the village of Fiskdale, in the Town of Sturbridge, in the County of Worcester and Commonwealth of Massachusetts, have this day, by the hands of Henry B. Montague, of Southbridge, deposited with the Springfield Safe Deposit & Trust Company, of Springfield, in said Commonwealth, the sum of Five thousand and Ninety (5090) Dollars, said amount to be held by said Trust Company and invested in its General Trust Fund and the net income arising therefrom to be paid to me semi-annually until my decease. Upon my death, the trust still continuing, said Trustees shall account for and pay over to my

legal representatives the principal of said fund with accrued interest then unpaid, freed from all trusts. It is expressly understood and agreed that during my life either party hereto may terminate this trust by giving to the other six months notice in writing of his or its intention so to do and upon the expiration of said period of six months said Trust Company shall account for and pay over to me, as below set forth, the principal of said fund with accrued interest then unpaid, freed from all trusts; provided however, that if I give the notice to terminate this trust, such notice must be assented to by all my living children, and by the proper legal representatives of any of my children then deceased. In the investment of said sum and management of this trust, said Trust Company shall be liable only for its wilful neglect or default and not for errors in judgment of its officers when acting in good faith." Nelson St. John, relict of the testatrix, and the trust company alone were parties to this agreement; it was not signed by any of the children. Sometime after this agreement and deposit, Nelson married Mildred Mary St. John, who survives as his widow, he having died intestate. By consent of all the children and the widow of Nelson the fund has been paid by the trust company to the petitioner. The question is, whether Mildred, the widow of Nelson, is entitled to share in the fund, or whether it ought to be paid wholly to the children of the testatrix.

It does not appear that any of these children died leaving issue before the death of the testatrix, or that any of them have died since her decease.

It has not been and could not well be contended that by the will the husband took anything more than a life estate. *Allen* v. *Hunt,* 213 Mass. 276. *Dallinger* v. *Merrill,* 224 Mass. 534, 540. *Homans* v. *Foster,* 232 Mass 4. *Whitcomb* v. *Taylor,* 122 Mass. 243.

There is strong ground for argument that the will of the testatrix created a contingent rather than a vested remainder in the children of the testatrix. If one of the children had died after the mother and before the father, leaving issue who survived the father as life tenant, such issue doubtless would have shared in the remainder. *Boston Safe Deposit & Trust Co.* v. *Blanchard,* 196 Mass. 35. *Welch* v. *Howard,* 227 Mass. 242. *Hall* v. *Read,*

232 Mass. 204. *White* v. *Underwood,* 215 Mass. 299. *Clarke* v. *Fay,* 205 Mass. 228, 231. If, however, it be assumed that the will created remainders vested in the children of the testatrix, the same result must be reached in the case at bar.

If the will had dealt with real estate alone, so far as this record discloses there would have been no occasion for the appointment of a trustee and no trust would have been created. But the will in terms included personal as well as real estate. The paper signed by the children of the testatrix specifically refers to "personal estate" and to a "bill of sale" as well as to "real . . . estate," "the home place" and "deeds," thus indicating plainly that the sum deposited in the trust company flowed in part from the sale of personal property. It is settled in this Commonwealth that, in the case of money or any personal property except specifically devised chattels, of which one person is given the use or income for life with remainder over, if no trustee is appointed, the executor is to hold it in trust and pay the income to the person entitled for life. *White* v. *Massachusetts Institute of Technology,* 171 Mass. 84, 96, and cases cited. In such cases a trust is necessarily implied. *Hooper* v. *Bradbury,* 133 Mass. 303, 307. *Rhines* v. *Wentworth,* 209 Mass. 585, 588.

When real estate is subject to a life estate and either to a vested or contingent remainder, there is provision by statute for sale and the appointment of a trustee to hold the proceeds. R. L. c. 127, §§ 28, 29, 31, as amended by St. 1917, c. 306. The parties in the case at bar without the intervention of a decree of the court converted the real estate into money and impressed it with a trust. *Lewis* v. *Shattuck,* 173 Mass. 486. They appear to have commingled the proceeds of the real and personal estate in a single fund. But, even if it came from the real estate alone, the inference is inevitable that the trust, with which it was impressed, was the same to which, if the terms of the statute had been followed, it ought to and would have been made subject.

The husband and children had no right to terminate such trust as to the personal property. We think that under the circumstances the same rule applies to the proceeds of the real estate. This is true even though the remainders had vested in the children. *A fortiori* they had no such right if the remainders created by the will were contingent. *Partridge* v. *Clary,* 228 Mass. 290. *Claf-*

*lin* v. *Claflin,* 149 Mass. 19.   *Young* v. *Snow,* 167 Mass. 287.
Beneficiaries may put themselves in a position where they may
be estopped to question the termination of the trust. ; But the
case at bar is not of that kind.   So far as concerns the fund now
in the hands of the petitioner, no controversy is raised as to the
title to the real estate or as to the payments made out of the
proceeds of its sale.   The remainder of the proceeds are treated
under the doctrine. of equitable conversion as standing in the
place of the real estate.

The children of the testatrix only undertook, so far as their
agreement went, to have the money held by the trust company
under a trust agreement, according to the terms of which the
income was to be paid to their father during his life and "at his
death to his legal representatives."   This instrument was not,
according to its terms, an attempt to terminate the trust.   While
not drawn with accuracy and fullness, that instrument con-
templates the continuance of a trust in general conformity, so
far as expressed, with the trust established by implication by
the will of the testatrix respecting personal estate.   That created
a life estate in the surviving husband Nelson.   The will also
directed the husband "to divide all . . . property equally between
our children still living after his death." - Of course that pro-
vision could not be executed by the husband because it was to
be executed only after his death.   It naturally, if not necessarily,
would be done by his personal representatives.   The provision
in the instrument signed by the children of the testatrix, to the
effect that the money should be paid at the death of their father
"to his legal representatives," did not purport to and did not
have the effect of changing the. terms of the trust.   It was in
conformity in substance to the terms of the will.   It was at most
a convenient method of administering the final distribution of
the fund.   It was analogous to the payment of appointed property
to the personal representatives of a person exercising a power
of appointment.   See *Olney* v. *Balch,* 154 Mass. 318.   The use
of the words "legal representatives" in the instrument signed by
the children and authorizing the payment of the trust fund by
the trust company to the "legal representatives" of their father,
cannot under these circumstances be construed as including a
further agreement wholly by inference that the fund when so

paid over is to be distributed by such personal representatives among those entitled to the personal estate of their father under the laws of intestate succession or under his will, if he had died testate. The rational construction of that instrument is that the fund is to be paid by such legal representatives in accordance with the terms of the mother's will impressed upon both her personal and real estate and following both, including the latter, into this new form of investment.

The provision in the agreement between Nelson St. John and the trust company, that at his death the fund should be paid over to his legal representatives "freed from all trusts," does not affect the rights of the children of the testatrix. They did not sign that agreement. They were not parties to it and do not appear to have assented otherwise to its terms. The insertion of such a provision in the agreement by Nelson St. John was beyond the power conferred upon him by the agreement signed by his children, and he could not bind them in that particular.

Since no attempt was made to "terminate the trust as provided in the agreement with said trust company," the effect of that part of the agreement need not be considered.

It follows that, without deciding other questions raised by the children of Caroline St. John, the decree is to be reversed and a decree entered instructing the petitioner to divide the fund in his hands equally between all the children of Caroline and Nelson St. John living at the time of the death of the latter, in accordance with the will of Caroline St. John, and that Mildred Mary St. John, the widow of Nelson, is not entitled to share therein.

*Decree accordingly.*