218 A.2d 661.

Manuel F. Jorge, *Ex'r vs.* Antonia O. G. da Silva *et al.*

APRIL 20, 1966.

Present: Roberts, C. J., Paolino, Powers and Joslin, JJ.

JOSLIN, J. This bill in equity for the construction of the last will and testament of Jose A. F. da Silva, late of the city of Providence, deceased, was brought by the executor thereunder. The respondents, the legatees and devisees under the will, are Antonia O. G. da Silva, the testator's widow, Asil de Infancia Desvalida da Horta and Asil de Mendicidade da Horta. When the cause was ready for the entry of a final decree in the superior court it was certified here pursuant to G. L. 1956, §9-24-28, for our determination.

From the agreed statement of facts which was filed in the superior court it appears that the testator, several years after the death of his first wife, went to the Azore Islands where he married the respondent Antonia in July 1958. About a month later he returned to the United States and Antonia, who followed him to this country in June 1959, resided with him in Providence until his death at the age of eighty-four in June of 1964. His will dated August 28, 1959 was duly probated, the executor has filed a final account which shows a personal estate in his possession consisting of negotiable securities and money on deposit in banks of a value of approximately $17,000, and a determination of whether that account shall be allowed awaits our decision on this bill for the construction of the decedent's will. Additionally, at his death the testator was seized and possessed in fee simple of a parcel of real estate with a three-family dwelling house situated thereon. The real es-

tate is unencumbered and is valued at $12,000. One of the tenements is occupied by the respondent widow and the monthly rental income from the other two is $100.

In the bill of complaint the executor in substance asks us to determine whether he should deliver possession of the personal estate to the widow or whether instead he should hold it in trust and pay the income therefrom to the widow and upon termination of her estate deliver the corpus to the other respondents as remaindermen.

The will is short and its provisions few. After detailing what funeral arrangements should be made and directing that masses be said for the repose of his soul, the testator bequeathed $2,000 outright to his wife if living at his death, and in addition by clause Five gave her what, at least as to the personalty, the parties agree is a life estate defeasible or determinable upon marriage. That clause reads as follows:

"Five: I give, devise and bequeath to my wife, Antonia O. G. da Silva for and during her lifetime and while unmarried all the rest and residue of my estate, personal or real estate and upon her death or remarriage then I give, devise and bequeath all the said rest and residue of my estate to Asil de Infancia Desvalida da Horta, Horta, Fayal, Ilhas dos Acores, AND to Asil de Mendicidade da Horta, Fayal, Ilhas dos Acores, Portugal, one half to each for their general purposes."

The only other provision of the will, save for those wherein he provided that the foregoing provisions for his wife should be in lieu of dower and for the appointment of an executor and the employment of counsel for the estate, is clause Seven which provides:

"Seven: Upon the death or remarriage of my wife, whichever occurs first, my executor shall sell and dispose of all my estate, reduce the same to cash and send the proceeds to the named beneficiaries."

The initial question is whether the widow may entrench upon or dispose of the principal of the personal estate. On

that issue it is fundamental that a power to use or consume principal cannot exist in favor of a prior taker under a will unless it either has been specifically conferred, or can be reasonably inferred from the testamentary language as being necessary to carry out the testator's intention. Because this will lacks an explicit provision permitting the widow to use the principal, her right to do so, if it exists at all, must be read into the will. Courts are willing to do this if they can find that the testator intended to permit the use of the corpus and we will construe this will in that manner if its language discloses a testamentary plan to allow the widow the right or power to consume the principal for her own benefit.

Generally, where a dispositive design to permit encroachment has been found it has been inferred from language used by the testator which indicated that he expected that the gift over would diminish before being paid over to the successor interests, or conferred upon the first taker broad dominion and control over the gift, or provided that the corpus should be used for the maintenance, comfort, care and support of the life tenant. The cases are collected at 108 A.L.R. 542.

Where a will provides, for example, that the gift over after the life estate is of "what may be left" or of "all that may remain" and be left" or of "whatever remains" or "may" or "shall remain," the courts have said that the testator anticipated a possible diminution of the corpus and in the absence of any language or circumstances indicating a contrary intent have sometimes inferred that the testator intended that the first taker could use or consume the corpus at the expense of the remaindermen. *Seaward* v. *Davis,* 198 N. Y. 415; *Young* v. *Hillier,* 103 Me. 17; *Brennan's Estate,* 324 Pa. 410; *Harris* v. *Knapp,* 38 Mass. 412; *Kimball* v. *New Hampshire Bible Society,* 65 N. H. 139; *In re Trust Under Will of Cosgrave,* 225 Minn. 443.

This court reached the same result in *Pierce* v. *Simmons,* 16 R. I. 689, where the gift over was of *"whatever* of my said estate * * * heretofore given, devised, and bequeathed to my wife * * * that *shall or may remain* at her death, shall go to and be the property of my sister * * *."* (italics ours) Our rationale was that the language "whatever * * * shall or may remain" following the gift of the life interest was used by the testator not with any "technical purpose," but with an intention limited only to insuring that any remnant of the estate that there might be after his widow's death should go to the interest in remainder.

The same question came to us again in *Billings* v. *Gladding,* 58 R. I. 218. There the gift, which included both real estate and personal property, was "to my husband George Drown Gladding * * * and after his decease, the remainder to my niece Mary Louise Billings * * *." We distinguished between the real estate and the personal property and as to the realty we gave to the word "remainder" its technical significance and found that the husband had a life estate and the niece a remainder in fee. When it came to the personal property, however, we followed *Pierce* v. *Simmons, supra,* and giving to the word "remainder" its "ordinary meaning" which we said was "something remaining or left over," we held that the husband had "full power to use and dispose of it in his lifetime, but with the limitation that, if any remained at his decease, it was to go to Mary Louise Billings."

Typical of the cases where a gift for the support, care and maintenance of the first taker has been the basis for a holding that the principal may be consumed before it reaches the remainderman is *Knight* v. *Knight,* 61 R. I. 187. There, in addition to other language evidencing a primary purpose to provide for the life tenant at the expense of the remainder interest, the will also provided that the first taker, the testator's wife, could use "all she desires or needs for her maintenance, or care * * *" with re-

mainder over. In substance, predicated both on the quoted as well as other language in the will, we found a clearly manifested dispositive intention to make the wife's needs for maintenance and care a primary charge upon the residue even though to do so might partially or totally destroy the remainderman's interest. See also *Elder* v. *Elder*, 50 Me. 535, *Brown* v. *Berry*, 71 N. H. 241, and *Longwith* v. *Riggs*, 123 Ill. 258.

Finally there is the line of cases where language authorizing the first taker "to do with as she sees fit," *Quarton* v. *Barton*, 249 Mich. 474, or "to have and to hold the same at her disposal during her natural life * * *," *Davis* v. *Walker*, 163 Ky. 442, or "to use or occupy for her own purposes * * *," *Martin's Estate*, 160 Pa. 32, has been construed as conferring upon the life tenant such a broad dominion or control over the corpus as will justify finding a dispositive plan to permit the use and consumption of the subject matter of the gift.

When we examine this will we find that it contains none of those indicia of dispositive intention upon which the authorities rely when they have inferred from the testamentary language a power in the first taker to dispose of the corpus. No dominion over the principal was conferred upon the widow nor was the gift to her for her life and while unmarried keyed to her maintenance, care and support, and rather than providing that the remaindermen should receive what was left over or might remain upon the termination of her prior interest the testator provided instead that they should receive the same "rest and residue" of the estate as was originally given to her. Moreover, the provision in clause Seven of the will, where the testator directed the executor upon the termination of the widow's interest to "sell and dispose of all my estate," expressly related to "all" of his estate and not merely to that portion which might remain at the end of Antonia's life tenancy.

It is clear that the will contains no language from which

a testamentary intention to permit the wife to entrench upon the corpus can reasonably be inferred. Indeed, the contrary is true because any construction of the will which gives to the widow a right to anything more than the bare income makes meaningless both the bequest of "all the *said* rest and residue of my estate" to the remaindermen and the direction to the executor to "sell and dispose of *all* my estate" and remit to the remaindermen upon the termination of the first of the successive interests. (italics ours) We hold that Antonia during her lifetime and until she remarries is entitled to income only and that she may not dispose of or use the principal for her own benefit.

We now come to the question of what should be done with the funds on deposit and the readily-convertible securities which together comprise the personal estate. The widow argues that the executor should be directed to turn over the estate to her and that she should not be required to furnish security for the protection of the next succeeding interests. The position of the remaindermen is that the executor should be declared a trustee and that he should be instructed to hold the estate in trust and to pay the income therefrom to Antonia during her lifetime and widowhood.

On this problem, as on others relating to the construction of wills, the courts look first to see whether the will discloses what was the testator's intention. Because it is so often incompletely expressed and difficult if not impossible to find, they have developed rules of construction which in appropriate circumstances they apply to resolve the troublesome question of what to do with the subject matter of the gift pending a termination of the interest of the first taker. We recognized this principle at an early date in *Harris* v. *Dawley*, 22 R. I. 633, 634, where while saying that we were "not unmindful of the rule that a general bequest of personalty for life, with remainder over, is commonly held to require the executor to invest the fund

and to pay over the income to the life-tenant, and upon his decease to pay the principal of the fund to the remainder-men," we nonetheless cautioned that "this rule only prevails when the intent of the testator has not been expressed to the effect that the life-tenant should have the fund *in specie,* and the modern doctrine is that very slight indications of the will of the testator are to be considered as establishing the latter view."

The Massachusetts rule is that, "in the case of money or any personal property except specifically devised chattels, of which one person is given the use or income for life with remainder over, if no trustee is appointed, the executor is to hold it in trust and pay the income to the person entitled for life. * * * In such cases a trust is necessarily implied." *Conant* v. *St. John,* 233 Mass. 547, 551. See also *Hooper* v. *Bradbury,* 133 Mass. 303, *Smith* v. *Field,* 98 N. J. Eq. 532, and *Payne* v. *Robinson,* 26 App. D. C. 283. Elsewhere, either pursuant to statute or acting under their own inherent powers courts of equity on similar factual situations have directed the executor to hold, invest, and manage the estate, to pay the income to the life tenant, and upon the expiration of that estate to distribute the corpus. *In re Estate of Miller,* 160 Ohio St. 529; *Will of Smith,* 176 Wis. 494; *Kiesling* v. *White,* 411 Ill. 493.

The Restatement of Property puts emphasis, not on a rule which applies where the testator has not expressed himself to the contrary, but on whether the will when viewed as a whole is reasonably susceptible of the construction that the testator manifested an intention that possession be in a trustee rather than in the life tenant. Section 200 of volume 2 reads as follows:

> "When a will creates successive interests in a thing other than land and such will is reasonably susceptible of the construction that the executor of such instrument is to become trustee of the thing for the benefit of the owners of such interests, then a trust is created.

The future interests are protected by those procedures which are available to the beneficiaries of trusts."

In the present case the testator used language in his will which while not explicitly declaring his intention in this respect sufficiently manifested it so that a resort to the rules of construction is unnecessary. In clause Seven, speaking of the time when his widow's estate would come to an end either by her death or remarriage, he directed his executor to convert all of the assets into cash and to distribute the proceeds to the remaindermen. The obligations so imposed cannot be performed until after the termination of the widow's estate and the direction to perform them at that time presupposes that the executor will not earlier have been discharged. Such obligations, while inconsistent with those of an executor, are akin to those customarily conferred upon a trustee. Normally, it is a trustee who administers an estate in which there are future interests; an executor usually distributes as directed by the will once he has reduced the assets to possession and has paid the decedent's debts and the expenses of administration.

The testator's imposition of these affirmative obligations upon the executor in our judgment demonstrates a dispositive design to create a trust. We will heed that manifestation, it being both ascertainable and lawful, and will by implication recognize the trust which he so clearly intended to create notwithstanding his failure to use the appropriate technical words. *Wood* v. *Hartigan*, 59 R. I. 333; *Town of South Kingstown* v. *Wakefield Trust Co.*, 48 R. I. 27; *Priestley* v. *Tinkham*, 68 R. I. 103. Moreover, we will not let the trust fall because no person is named in the will to hold that office. Instead, as in analogous instances, we direct that the duties of the trustee should be performed by the executor who, we hold, accedes to that office by operation of law. *Clarke* v. *Burdick*, 6 R. I. 151; *Pomroy* v. *Lewis*, 14 R. I. 349; *Priestley* v. *Tinkham, supra.*

Our construction of the will is limited to a consideration of those matters fairly raised in the bill of complaint. They concern only personalty. We refuse to pass on the nature and extent of Antonia's interest in the real estate, even though the parties by stipulation, filed subsequent to argument, have requested us to do so. Our refusal is premised not only on the failure to include specifically the questions relating to the real estate within the scope of the bill, but for the additional reason that the parties have not given us any assistance on the question of whether Antonia's interest in the realty, whatever it may be, should be differentiated from that in the personalty.

On April 29, 1966, the parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*Dominique S. Pavao*, for complainant.

*SaoBento & SaoBento, Antonio SaoBento, Jr.*, for respondent Antonia O. G. da Silva.

*Norman F. Smith, Francis J. Carreiro*, for respondents Asil de Infancia Desvalida and Asil de Mendicidade da Horta.